## TEXAS & PACIFIC RAILWAY COMPANY
### *v.* MARLOR.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

Argued December 5, 6, 1887. — Decided December 19, 1887.

A railroad company, in a bond issued by it, promised to pay the principal at a specified time and place, " with interest thereon at the rate of seven per cent per annum, payable annually on the 1st day of July in each year, as provided in the mortgage hereinafter mentioned." The bond also set forth, that the interest was secured by a mortgage lien on the net income of certain specified lines of road; and that, " in case such net earnings shall not in any one year be sufficient to enable the company to pay seven per cent interest on the outstanding bonds, then scrip may, at the option of the company, be issued for the interest." A certificate on the bond, by the mortgage trustees, stated that the bond bore " seven per cent interest per annum, payable yearly." The mortgage stated that it was given to secure the payment of the principal and interest of the bonds " according to the tenor thereof." On July 1st, 1882 and 1883, the company neither paid the interest in money nor declared its election to issue scrip for the interest. Shortly after each of those days it notified the bondholders that it was not prepared to pay interest, as the earnings of the railway were not sufficient. It took no action in reference to the issue of scrip until October, 1883. In a suit by a bondholder who refused to receive the scrip, to recover the interest in money : *Held,*

(1) If the company did not pay the interest in money by the interest day, it was bound to exercise, by that day, its option to pay it in scrip, and, if it did not, it became liable to the bondholders to pay the interest in money;

(2) No demand by a bondholder was necessary, in order to entitle him to the payment of the interest in money, on the failure of the company so to exercise such option.

THIS was an action to recover interest alleged to be due on bonds issued by the plaintiff in error. Judgment for plaintiff, to review which defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. John F. Dillon* for plaintiff in error.  *Mr. W. S. Pierce, Jr.,* was with him on the brief.

*Mr. John R. Dos Passos* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the Southern District of New York, brought by the Texas and Pacific Railway Company, a corporation organized and existing under acts of the Congress of the United States, to review a judgment entered against it by that court on the 17th of September, 1884, in favor of Henry S. Marlor, for the sum of $23,204.99.

The suit was commenced in a court of the State of New York, in November, 1883, and was removed into the Circuit Court by the defendant. It was tried by that court, on filing a written waiver of a jury, on an agreed statement of facts, and on the depositions of witnesses. The material facts of the case, as found by the Circuit Court, are as follows : Prior to the first of July, 1883, the plaintiff became the owner of 150 bonds issued by the defendant, and entitled to the interest due thereon on the first days of July in the years 1882 and 1883, according to the terms and conditions of the bonds. Each bond was in the following form :

"THE UNITED STATES OF AMERICA.

"No. ——.                                                     $1000.

"The Texas and Pacific Railway Company.

"Chartered by act of Congress.

"*Seven Per Cent Income and Land Grant Bond on the Eastern Division.*

"The Texas and Pacific Railway Company hereby acknowledges itself to be indebted to —— ——, of —— ——, or assigns, in the sum of one thousand dollars, lawful money of the United States of America; which sum the said company promises to pay the said —— ——, or assigns, at the office of the company, in the city of New York, on the 1st day of January, A.D. (1915) one thousand nine hundred and fifteen, with interest thereon at the rate of seven per cent per annum, payable annually on the 1st day of July in each year, as provided in the mortgage hereinafter mentioned.

. " This bond is one of a series of bonds numbered consecutively from one to eight thousand nine hundred and eight, of the denomination of one thousand dollars each, of like tenor and date, the payment whereof is secured by a first mortgage of even date herewith, duly recorded, upon certain lands heretofore granted to the Texas and Pacific Railway Company, by the State of Texas, or in which said company is in any manner interested, being a first lien or charge upon all those sections or fractional sections or square miles of land acquired or to be acquired by said company in constructing its lines of road east of Fort Worth, under or by virtue of the acts of incorporation of the Southern Pacific Railroad Company, the Southern Transcontinental Railroad Company, the Memphis, El Paso, and Pacific Railroad Company, or of the several supplements and enactments relating thereto, or under any of the special or general laws passed by the Legislature of the State of Texas, and applicable to said companies, or either of them, or to the Texas and Pacific Railway Company, the total quantity of land to be acquired in constructing said lines of railway under the several grants being estimated at or about 7,600,000 acres. This bond has also, as security for the interest, a mortgage lien upon the net income of the said Texas and Pacific Railway Company, derived from operating its lines of railway east of Fort Worth, in the State of Texas, after providing for the operating expenses, the current repairs and reconstructions, and the interest upon the first and second mortgage bonds secured upon said lines of railway, the length of which, constructed and to be constructed, is estimated to be 524 miles; and in case such net earnings shall not in any one year be sufficient to enable the company to pay seven per cent interest on the outstanding bonds, then scrip may, at the option of the company, be issued for the interest, such scrip to be received at par and interest, the same as money, in payment for any of the company's lands acquired as aforesaid in Texas, at the ordinary schedule price, or it may be converted into capital stock of the company, when presented in amounts of $100 or its multiple. The holder of this bond is entitled to the benefit of the additional security of the sinking fund provided

for in said mortgage, consisting of the net proceeds of the sales of the lands aforesaid, which are to be applied from time to time to the purchase of said bonds at their market value, not exceeding par, or to their redemption, as provided in the mortgage aforesaid. This bond will also be received by the company at par and accrued interest, in payment or exchange for any of its lands covered by the mortgage aforesaid, at the current cash price of the same as fixed from time to time.

"In witness whereof, the said The Texas and Pacific Railway Company has caused these presents to be duly executed, sealed with its corporate seal, and attested by the proper signatures of its president or vice-president and secretary, this 15th day of May, A.D. 1875.

"FRANK BOND, *Vice-President.*

"Attest :         "C. E. SATTERLEE, *Secretary.*"

Upon each bond was a certificate signed by the trustees in the mortgage mentioned in the bond, in the following form :

"*Certificate of Trustees.*

"This bond is one of a series of bonds, each for the sum of one thousand dollars, lawful money of the United States of America, bearing seven per cent interest per annum, payable yearly, said bonds being numbered consecutively from number one to number eight thousand nine hundred and eight. The said bonds are secured by a first mortgage upon all the lands of the Texas and Pacific Railway Company in the State of Texas, granted in aid of the construction of its lines east of Fort Worth, and also upon the net income of said lines of railway, after deducting current expenses, reconstruction, and repairs, and the interest upon the first and second mortgages on said lines of railway; and they are also receivable, the same as money, in payment or exchange for such lands, at the current price of the same as fixed from time to time.

"W. T. WALTERS,
"GEORGE D. KRUMBHAAR,
*Trustees.*"

The complaint alleged that the defendant did not exercise the option given to it by the bonds to pay the plaintiff the interest in scrip upon the 150 bonds, which became due and payable on July 1, 1882, or that which became due and payable on July 1, 1883, and demanded judgment for the interest in money, with accrued interest from those days respectively.

There was no formal presentment by the plaintiff of the bonds in suit for the payment of interest on July 1, 1882, or on July 1, 1883, or at any other time. Shortly after each of those days, the treasurer of the defendant, at the defendant's office, notified the holders of the bonds, that it was not prepared to pay interest, as the earnings of the railway were not sufficient; and no action was taken by it in reference to the issue of scrip. Before the commencement of this suit, and induced by the suggestion that suits were about to be brought to recover the interest on the bonds, and on or about October 12, 1883, the executive committee of the defendant's board of directors adopted a resolution providing for the payment of the interest in question in scrip. Notice of this action on the part of the defendant was given to the plaintiff and to the bondholders generally, by publication, before this suit was brought, and the defendant notified the plaintiff of its willingness to deliver to him his scrip for the interest in suit, and tendered it to him at the trial, but he refused to receive it.

On the 29th of March, 1875, the defendant had outstanding 9252 land-grant bonds, secured by a first mortgage upon all the lands in the State of Texas which it had acquired, or might thereafter acquire, by virtue of its consolidation with the Southern Pacific Railroad Company and the Southern Transcontinental Railway Company, or by virtue of its consolidation with, or purchase of, any other railroad company in the State of Texas, under the authority of the acts of Congress of March 3, 1871, and May 2, 1872; also, certain construction bonds, secured by a first mortgage upon its lines of railway and their appurtenances east of Fort Worth in the State of Texas. Those land-grant bonds and construction bonds were fixed obligations, with coupons for semiannual interest, and the mortgages which secured them contained provisions for fore-

closure, in case of default in the payment of such interest. On the 29th of March, 1875, the road of the defendant was only partially completed to Fort Worth, about 325 miles of it being then built and in operation. The defendant had made default in paying the interest on the bonds above mentioned. On that day the stockholders met, and passed the following resolution: "Resolved, That the board of directors shall be, and they are hereby requested and fully authorized and empowered to provide for and to issue eighty-nine hundred and eight (8908) income and land-grant bonds, each for the sum of one thousand dollars, bearing seven per cent interest, the interest and the principal of said bonds to be payable in United States currency, and said bonds to mature in forty years from their date, and to secure the payment of the interest and the principal of said bonds by a first mortgage upon all the lands heretofore granted to this company, or in which this company in said State is in any manner interested, being a first lien or charge upon all those sections or parts of sections or square miles of land acquired by the Texas and Pacific Railroad Company, or to be acquired by said company, in constructing its lines of road east of Fort Worth, under or by virtue of the acts of incorporation of the Southern Pacific Railroad Company, the Southern Transcontinental Railway Company, the Memphis, El Paso and Pacific Railroad Company, or of the several supplements and amendments relating thereto, or under any of the special or general laws passed by the Legislature of the State of Texas, and applicable to said companies, or either of them, or to the Texas and Pacific Railway Company, the total quantity of land so to be acquired, in constructing said lines of railway, being estimated at about 7,600,000 acres; and said mortgage or deed of trust shall also include the net income of the company from the operating of its lines east of Fort Worth, after providing for the operating expenses, the current repairs and reconstructions, and the interest on the first and second mortgages hereinbefore provided for; and there shall be included in said mortgage or deed of trust a provision for a sinking fund out of the net proceeds of sales of land, and by the receiving of said bonds in payment for purchases of lands

covered by the mortgage. The bonds thus provided for shall be exchangeable for outstanding land-grant bonds, and used in purchase of material and supplies and for construction work, or may be applied toward the payment of any of the company's indebtedness or obligations."

In pursuance of the authority thus conferred, the board of directors of the defendant issued 8857 income and land-grant bonds, in the form of the one above set forth, and executed a mortgage to secure them, dated May 15, 1875, and a supplemental mortgage dated March 23, 1876, each to Walters and Krumbhaar, as trustees. The mortgage of May 15, 1875, recites the foregoing resolution, and sets out a form of the bond and of the certificate of the trustees, and then states that, " in order to secure the payment of the principal and interest " of the 8908 bonds, ".according to the tenor thereof," the company conveys to the trustees " all the lands heretofore granted to this company, or in which this company in the State of Texas is in any manner interested, being all those sections or parts of sections or square miles of land acquired by the Texas and Pacific Railway Company, or to be acquired by said company, in constructing its lines of road east of Fort Worth, in the State of Texas, under or by virtue of the acts of incorporation of the Southern Pacific Railroad Company, the Southern Transcontinental Railroad Company, the Memphis, El Paso and Pacific Railroad Company, or of the several supplements and amendments relating thereto, or under any of the special or general laws passed by the Legislature of the State of Texas, and applicable to said companies or either of them, or to the Texas and Pacific Railway Company, the total quantity of lands so to be acquired in, constructing said lines of railway being estimated at about 7,600,000 acres of land ; also all the net income of the lines of railway and appurtenances of the said The Texas and Pacific Railway Company east of Fort Worth, in the State of Texas, being five hundred and twenty-four miles of railroad nearly completed, after deducting the expenses of operating and maintaining the same, and the interest and other resources due by reason of previous circumstances thereon, the same being the Texas and

Pacific Railway Company's lines of railway, constructed and to be constructed, from the state line between Louisiana and Texas, westward, through Marshall and Dallas, to Fort Worth, in the State of Texas, and from Texarkana, on the state line between Texas and Arkansas, to a point of junction, via Clarksville, Paris, Bonham, and Sherman, with the line aforesaid at or near Fort Worth, and from Marshall aforesaid, through the town of Jefferson, to a point of junction, at or near Texarkana, with the said line from Texarkana to Fort Worth, together with all the depots, depot grounds, locomotives, rolling-stock of every kind, and every appurtenance of every kind, real or personal, requisite or convenient for the use and operation of said lines of railway, including, also, all the net income rising from the leasehold interest of said company in the line of railroad of the Vicksburg, Shreveport and Texas Railroad Company, extending from Shreveport, in the State of Louisiana, to a connection with the line of railroad of the Texas and Pacific Railway Company at the state line between Louisiana and Texas."

The mortgage further provided, that no bonds should be issued until at least $2,254,000 of the outstanding land-grant bonds theretofore issued should be deposited with the trustees and registered in their names, to be held as additional security for the bonds to be issued under the mortgage, until all the land-grant bonds should have been so deposited or retired by the company, and the mortgage under which they were issued satisfied of record, the holders of any outstanding land-grant bonds to have the right, until January 1, 1876, to exchange their bonds, with accrued interest, at par, for the bonds issued under the new mortgage, the bonds so received in exchange to be registered and held by the trustees as additional security, as before provided, and, after January 1, 1876, the remainder of the bonds under the new mortgage to be disposed of as the board of directors might determine. The mortgage also provided for giving to the trustees lists and maps of the lands mortgaged, with minimum prices of sale, to be approved by both parties; and it contained sundry provisions for the sale of the lands, the purchase money to be received by the trus-

tees, subject to the right of purchasers to pay for the lands with the bonds issued under the mortgage. Out of the proceeds of the sales of the lands, the expenses of the land department, and compensation for the services and expenses of the trustees, were to be paid, and the balance was to be appropriated to a sinking fund to redeem the bonds. Provision was made for applying the sinking fund yearly to purchasing the bonds at or less than par, or, if that could not be done, to redeeming bonds designated by lot; also, for the sale of the lands to pay the principal of the bonds, and for the termination of the trust on the payment in full of the bonds and interest. The supplemental mortgage of the 23d of March, 1876, conveyed to the trustees, subject to the trust created by the mortgage of May 15, 1875, "the lines of railway and appurtenances of the said Texas and Pacific Railway Company east of Fort Worth, in the State of Texas, being five hundred and twenty-four miles of railroad nearly completed, after deducting the expenses of operating and maintaining the same, and the interest and other resources due by reason of previous circumstances thereon, the same being the Texas and Pacific Railway Company's lines of railway, constructed and to be constructed, from the state line between Louisiana and Texas, westward, through Marshall and Dallas, to Fort Worth, in the State of Texas, and from Texarkana, on the state line between Texas and Arkansas, to a point of junction, via Clarkesville, Paris, Bonham, and Sherman, with the line aforesaid at or near Fort Worth, and from Marshall aforesaid, through the town of Jefferson, to a point of junction, at or near Texarkana, with the said line from Texarkana to Fort Worth, together with all the depots, depot grounds, locomotives, rolling-stock of every kind, and every appurtenance of every kind, real or personal, requisite or convenient for the use and operation of said lines of railway; including, also, all the net income arising from the leasehold interest of said company in the line of railroad of the Vicksburg, Shreveport and Texas Railroad Company, extending from Shreveport, in the State of Louisiana, to a connection with the line of railroad of the Texas and Pacific Railway Company, at the state line between Louisiana and Texas,

under and subject, nevertheless, to the lien and charge of prior encumbrances thereon, and subject to all the trusts, limitations, conditions, and provisions of every kind mentioned and set forth in the deed of trust dated May 15th, 1875, whereto this instrument of writing is supplementary."

Subsequently to January 1, 1876, as of which date the first instalment of the income and land-grant bonds was issued, and in the years or interest periods ending respectively on the first days of July, 1877, 1878, and 1879, the net earnings of the company, as defined in the bonds and mortgage, were insufficient to enable it to pay the interest on the bonds outstanding at those dates, and, throughout those years or interest periods, no interest was paid upon the bonds nor any scrip issued for the interest or any part of it. On the 16th of February, 1880, in pursuance of a resolution of the board of directors, the defendant issued scrip for the interest accumulated during the entire period included between the 1st of January, 1876, and the 1st of July, 1879. The net earnings of the road having been insufficient to enable the defendant to pay the interest on the bonds for the years ending July 1, 1880, and July 1, 1881, it issued scrip for the interest for those years respectively. For the year ending July 1, 1882, there was a deficit of $195,076.17 in the earnings of the road; and for the year ending July 1, 1883, there were surplus earnings of $131,867.90; thus showing a net deficit, for the operations of those two years, of $63,208.27. The fact that the net earnings of those two years were insufficient to enable the defendant to pay the interest on the income and land-grant bonds as provided therein was promptly made known and declared by it to its bondholders, and the plaintiff had due notice thereof.

The income and land-grant bonds are registered obligations. Interest on them is payable only to registered holders, or their assignees by duly executed and acknowledged or authenticated order or assignment, at the office of the defendant, and upon the delivery by such holders, or such assignees, of receipts for the interest, or, in case scrip is issued, of receipts for the scrip. By uniform practice, from the first issue of scrip, the bonds, or such orders or assignments, are presented by the payee or

registered holder, or such assignee, at the office of the defendant, for scrip. When scrip is delivered, no endorsement is made on the bond, but the receipt or voucher for the scrip is signed by the person receiving it, and the defendant cannot know to whom to issue or deliver scrip, or who is entitled thereto, or who will receive the same, until the bonds, or such assignments or orders, are presented at its office and scrip demanded, or unless the registered holder, properly identified, presents himself at the office of the defendant and demands the issue of the scrip. The plaintiff, in respect of the interest sued for in this suit, never presented the bonds and demanded the issue of the scrip for the years 1882 and 1883.

. On the foregoing facts, the Circuit Court found, as conclusions of law, that the defendant failed to exercise its option to pay the plaintiff the interest in scrip due on the 1st of July, 1882, and that due on the 1st of July, 1883, on the 150 bonds; and that the plaintiff was entitled to judgment for the two sums of $10,500 each, with interest on one from the 1st of July, 1882, and interest on the other from the 1st of July, 1883.

The opinion of the Circuit Court, which accompanies the record, and is reported in 22 Blatchford, 464, proceeded upon the view, that there was nothing in the language of the mortgage which controlled or qualified the absolute promise in the bond to pay interest in money or in scrip; that the bond contained a promise to pay interest annually; that there was nothing in it to show that the owner was not to have his interest, or scrip instead, at the election of the defendant, if the net earnings of the railway were not sufficient to pay the interest; that the plaintiff was entitled to his money, or the scrip as its substitute, on the day on which, by the terms of the bond, the defendant was to pay the interest or exercise the alternative; that there was no reservation, in terms or by implication, of a right in the defendant to exercise the option after the day of payment; that, that day having elapsed without an election by the defendant, the bondholder was entitled to be paid his interest in money; and that it was not incumbent on the plaintiff to present the bonds for the payment of

interest on the day it fell due, or to then demand the payment
of interest, as a prerequisite to his right of action to recover
the interest money.

It is contended, for the defendant, that the bond in ques-
tion is an income bond, in the sense that the interest on it is
not payable in money on the first day of July in each year,
unless net earnings, as defined in the bond and the mortgage,
have been made; that, if sufficient net earnings, as thus de-
fined, have not been acquired during the year, then, unless the
company exercises its option to issue scrip, the interest accu-
mulates until it is earned, or until it is paid out of the sinking
fund created by the sale of the mortgaged lands, or until the
bond with its accrued interest becomes due; that the effect of
a failure to exercise the option on the interest day is not to
create a present fixed obligation to pay the interest in money;
that, in any event, the option to pay in scrip need not be exer-
cised on or by the interest day, but it is sufficient if the scrip
is ready for the bondholder when he demands it; and that the
effect of any default to pay in scrip is not to make the de-
fendant liable for the full amount of the interest, but only for
the value of the scrip at the time of default.

We are of opinion, however, that the Circuit Court was
correct in its construction of the contract between the parties.
Much stress is laid by the defendant upon the fact that the
bond, on its face, is called a "seven per cent income and land-
grant bond;" and from this the argument is deduced that the
interest is payable only out of income. But the expression
"income and land-grant bond" is sufficiently justified and
satisfied by the fact that the mortgage states that the prin-
cipal and interest of the bonds are secured by a mortgage upon
the land acquired, or to be acquired by the company, under
the statutes specified in the mortgage, and upon the net
income of the lines of its railway east of Fort Worth. The
mortgage states, that it is given to secure 8908 income and
land-grant bonds, each for $1000, bearing seven per cent
interest, the interest and the principal of the bonds to be pay-
able in United States currency, (as distinguished from two
other classes of bonds authorized at the same time, which

were to be payable in gold coin). The resolution of the stockholders authorizing the issuing of the bonds was to the same effect. The option to pay the interest in scrip was not expressed in the resolution of the stockholders, but the mortgage states that the principal and interest of the bonds are to be paid "according to the tenor thereof." The bond contains a promise to pay the $1000 on the 1st of January, 1915, in lawful money of the United States, "with interest thereon at the rate of seven per cent per annum, payable annually on the first day of July in each year, as provided in the mortgage hereinafter mentioned." The words "as provided in the mortgage hereinafter mentioned" refer to the payment of the principal as well as the interest.

There is thus far an absolute obligation and promise to pay the interest on the first day of July in each year. How is that promise qualified subsequently in the bond? Only by the provision, that, in case the net earnings derived from operating the lines of railway east of Fort Worth shall not in any one year be sufficient to enable the company to pay seven per cent interest on the outstanding bonds, then scrip may, at the option of the company, be issued for the interest. The only alternative to the payment of the interest in money on the day named is that, if the net earnings in the year shall not be sufficient to enable the company to pay the interest on the outstanding bonds, it may elect to issue scrip for the interest; but the scrip is to be issued, if issued, as and for the unpaid interest; and it is plain that the option of the company to issue the scrip must be exercised at the time when, but for the insufficiency of the net earnings, it would be required to pay the interest in money. If the option be thus exercised, reasonable time may be allowed to prepare the scrip and issue and deliver it; but, as the scrip is to be received at par and interest, the same as money, in payment for the lands, or for conversion into the capital stock of the company, it is necessarily to draw interest from the day on which the interest which it takes the place of was payable.

In the absence of an exercise of the option, on the day the interest was due, to pay it in scrip, the bondholder had an

immediate right of action for the interest money. The security given by the mortgage upon the lands and upon the net income is entirely separate and apart from the obligation of the company to pay the interest in money or in scrip. This last provision is one for the benefit of the company, to enable it to retain in its treasury the net earnings derived from operating its lines east of Fort Worth, if such earnings do not amount in the year to enough to enable it to pay the full interest on the outstanding bonds; but, in such case, it must exercise its option, by the day the interest falls due, to give to its bondholders, for such interest, scrip for the full amount thereof. The contract cannot be construed· so as to make it possible for the company to retain all its net earnings, however little under seven per cent on the amount of the outstanding bonds, and yet withhold from the bondholders the scrip, as the representative of the full interest promised to be paid. We do not, however, mean to suggest that the company may not pay the net earnings in money for part of the interest, and pay the rest in scrip.

By the mortgage, all the net income from the lines east of Fort Worth was pledged to secure the payment of the principal and interest of the bonds " according to the tenor thereof ; " and the bond states that it is secured by a mortgage lien upon such net income, " as security for the interest." The fact that the bond also states, on its face, that it will be received by the company " at par and accrued interest," in payment or exchange for any lands covered by the mortgage, serves to confirm the construction above given. ˙ So, also, the certificate of the trustees on each bond states that the bonds bear seven per cent interest per annum, payable yearly.

It is contended for the defendant, that it cannot ascertain by the interest day whether the net earnings for the year are sufficient to pay the interest in money, and that hence it cannot exercise its option, by the interest day, to pay the interest in scrip. It is a sufficient answer to this position to say that the contract it has made is that it will exercise the option by that day. Furthermore, it is found that the fact that the net earnings of the two years ending July 1st, 1882, and July 1st,

1883, were insufficient to enable the defendant to pay the interest, was promptly made known by it to the bondholders; and it is not found that it could not have sufficiently ascertained such fact by the interest day to enable it to exercise the reserved option.

It is urged for the defendant that, because it did not pay interest or issue scrip therefor, for the interest periods ending July 1, 1877, 1878, and 1879, but issued scrip in February, 1880, for the interest accumulated for the period between January 1, 1876, and July 1, 1879, a practical construction was put by the bondholders upon the contract, which cannot be regarded as merely a forbearance, or a waiver for the time being, of their rights under the contract. But it is also found as a fact, by the Circuit Court, that the net earnings of the road having been insufficient to enable the company to pay the interest on the bonds for the years ending July 1, 1880, and July 1, 1881, it issued scrip for the interest for those years respectively. We see nothing, in all these facts, which amounts to a waiver which can affect or prejudice the right asserted by the present plaintiff in this suit.

We are also of opinion that no demand by the plaintiff was necessary, to entitle him to the payment of the interest in money, on the failure of the defendant to exercise its option, on the day the interest fell due, to issue scrip therefor. It is stated in the findings of the Circuit Court, that shortly after the 1st of July, 1882, and shortly after the 1st of July, 1883, the treasurer of the defendant, at its office, notified the holders of its bonds that it was not prepared to pay the interest, as the earnings of the railway were not sufficient; and no action was taken by it in reference to the issue of scrip. This shows that it did not on the proper days elect to issue scrip. The bond states that the scrip, if issued, is to be issued " for the interest," that is, in place of the interest, and, under the terms of the bond, the company was bound to pay the interest on the day it was due, or else to issue the scrip, on the failure of a sufficiency of net earnings to pay the full interest. There was, therefore, no obligation on the part of the bondholder to demand his interest in money, in order

to perfect his right to recover it, in the absence of the exercise of an option by the company, on the day the interest fell due, to pay it in scrip. He had no right, by the terms of the contract, to demand the scrip. It was for the company to announce its election to pay in scrip, or, as it did, take no action in reference to the issue of scrip. In the absence of an election by the company, on the day the interest fell due, to issue the scrip, the right of action of the plaintiff immediately came into existence, without any demand on his part, to recover the full amount of the interest mentioned in the bond.

The cases cited by the defendant on the question of damages do not apply to an alternative contract like that in the present case. It falls within those cases in which, if the contract be that the promisor shall do one of two things by a certain day, at his election, he cannot exercise his election after the day has passed. This is familiar law, and needs no citation of authorities.

The judgment of the Circuit Court is

*Affirmed.*