### NEW YORK TRUST CO. v. MICHIGAN TRACTION CO. et al.

(District Court, W. D. Michigan, S. D.    February 2, 1912.)

1. RAILROADS (§ 173*)—MORTGAGES—ACCOUNTING—NECESSITY FOR FORECLOSURE.

A mortgagee of electric railroad property is entitled to an accounting under an agreement, supplemental to the mortgage, requiring the mortgagor to pay 5 per cent. of the gross earnings to create a sinking fund to redeem the mortgage bonds, without foreclosing the mortgage, applying for a receiver, or taking possession of the mortgaged property.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 173.*]

2. DAMAGES (§ 3*)—CONTRACTS—BREACH.

Generally for a default in paying money at a time and place agreed upon, or for any other breach of a contract, damages may be recovered against the obligor in an action at law.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 3.*]

3. MORTGAGES (§ 209*)—TRUSTEE—DUTIES.

A trustee under a trust deed, independently of its provisions, can, and must whenever necessity arises, invoke the aid of a court of equity to preserve the trust estate; and this power cannot be restricted, even by agreement of the parties.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 209.*]

4. RAILROADS (§ 173*)—MORTGAGES—SINKING FUNDS—DUTY TO MAINTAIN.

Under a mortgage of electric railroad property requiring the mortgagor to maintain and improve property so that service might be furnished, as well as to pay to the trustee 5 per cent. of the gross earnings as a sinking fund to redeem the mortgaged bonds, the latter obligation is not canceled by exhausting the income under the first obligation.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 173.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Bill by the New York Trust Company against the Michigan Traction Company and another. Decree for complainant.

Kleinhans & Knappen, for complainant.

Sanford W. Ladd (Joseph G. Hamblen, Jr., of counsel), for defendants.

SESSIONS, District Judge. The facts in this case have been stipulated and are not in controversy. The defendant Michigan Traction Company formerly owned and operated an electric railway in and between the cities of Kalamazoo and Battle Creek, in this state. On January 1, 1901, the Michigan Traction Company duly executed, acknowledged, and delivered to the Investment Trust Company of Philadelphia, as trustee, a first mortgage to secure an issue of bonds of the par or face value of $700,000, dated January 1, 1901, and payable on or before January 1, 1921, with interest from date until paid at the rate of 5 per cent. per annum, payable semiannually. This mortgage, covered all the property of every kind and description then owned or thereafter acquired by the Michigan Traction Company, including physical properties, franchises, and the tolls, earnings, income, revenues, rents, issues, and profits derived from its railway. The mortgage contained the usual conditions and provisions, among which were the right of the mortgagor to the full use, possession, and enjoyment of the mortgaged property until default in some of the conditions of the mortgage, and the right of the trustee and mortgagee, upon default in any of the conditions of the mortgage, to declare the whole indebtedness due, and to foreclose and, in its discretion, to take possession of and operate the railway, and collect and receive all tolls and revenues derived therefrom, and apply the same in the payment of operating expenses and upon the mortgage, and in payment of the bonds and the interest thereon.

It was further provided in and by the mortgage that the Traction Company would from time to time during the existence of the trust make, execute, acknowledge, and deliver such further instruments and conveyances as might be necessary to further secure the rights and remedies of the holders of the bonds. Pursuant to this provision, on February 8, 1901, the defendant Traction Company executed and delivered to the Investment Trust Company a further and supplemental indenture or agreement out of which this controversy has arisen. The supplemental indenture added two paragraphs to the original mortgage, as follows:

"Fifteenth. That the said railway company shall and will in each year, beginning two years after the date of the bonds secured by said deed of trust or mortgage, set aside and pay unto the said trustee not less than 5 per centum of the gross earnings of said company in each year, as a sinking fund for the redemption of said bonds. The moneys paid into the sinking fund shall be invested by the said trustee from time to time, together with all income and increase thereof, and held and retained as a trust fund for the redemption of the said bonds at maturity: Provided always, however, that the trustee shall have the right, in its discretion, to invest said sinking fund in first mortgage, interest-bearing securities, and it may also use the said fund from time to time in the purchase of the said bonds at any price not exceeding par and a premium of 10 per centum upon the par value thereof.

"Sixteenth. If the said railway company shall fail to set aside and pay unto the said trustee not less than 5 per centum of the gross earnings of said company in any year, beginning two years from the date of said bonds, as a sinking fund for the redemption thereof, such failure shall be deemed a default in the requirement of the said deed of trust or mortgage; and if such default shall continue for the space of 30 days after due and proper notice or demand, then and in such case the trustee, for the time being, may, and upon the written request of the holders of a majority in amount of said bonds then outstanding shall, declare the whole amount of the principal and interest of each of said bonds, together with all accrued and unpaid interest thereon, due and payable forthwith, and thereupon, upon like request, it shall be lawful for the trustee to proceed in the manner specified in the fifth paragraph of said deed of trust or mortgage to exercise the remedies, or any of them, authorized by said paragraph, in the case of default, subject, however, to all the provisos therein contained, to the same extent and with the same effect as if said remedies and provisos were herein fully set forth."

On July 25, 1901, the Michigan Traction Company, for the purpose of confirming and ratifying the indenture of February 8, 1901, executed and delivered another instrument of the same tenure and effect. The complainant is the successor of the Investment Trust Company as trustee in said mortgage and has been such trustee since March 15, 1904.

Shortly before April 25, 1906, the defendant Michigan United Railways Company was organized for the purpose of acquiring the properties and franchises of the defendant Michigan Traction Company, and also of the Jackson & Battle Creek Traction Company and the Lansing & Suburban Traction Company. On May 2, 1906, the defendant Michigan Traction Company conveyed to the defendant Michigan United Railways Company all of its property and franchises, and at about the same time the Michigan United Railways Company purchased and took possession of the properties and franchises of the Jackson & Battle Creek Traction Company and the Lansing & Suburban Traction Company, and has, since the purchase thereof, operated all of said properties as one system. The receipts from the railway line formerly belonging to the Michigan Traction Company have been mingled with, and have not been kept separate from, the receipts derived from the other properties of the Michigan United Railways Company. The latter company has at all times been in the full possession of its properties, and complainant has not taken nor demanded possession thereof.

At the close of each of the years 1905, 1906, 1907, and 1908, complainant demanded of the defendants a statement of the gross earnings of the Michigan Traction Company properties during such year, and demanded the payment of 5 per cent. of such gross earnings in accordance with the provisions of article 15 of the mortgage above quoted. Neither of the defendants has complied with such demands, and neither of them has paid to the complainant 5 per cent. of such gross earnings or any part thereof.

Prior to the sale of the property on May 2, 1906, the Michigan Traction Company, and after such sale the Michigan United Railways Company, expended in betterments and extensions of the railway line all the earnings of that part of the line over and above operating expenses and fixed charges, and in addition thereto the Mich-

193 F.—12

igan United Railways Company expended in betterments and extensions the sum of $305,000 derived from the sale of bonds. The amount so expended for betterments and extensions of the property, exclusive of said sum of $305,000, exceeded 5 per cent. of the gross earnings of the property, and has enhanced the value of complainant's security. The expenditures so made were necessary to keep the road and the equipment in proper condition as required by its franchises.

Complainant's bill is filed to obtain a decree requiring defendants to come to an accounting as to the gross earnings of that part of the property formerly belonging to the Michigan Traction Company and covered by the mortgage, requiring them to pay to complainant 5 per cent. thereof to provide a sinking fund for the redemption of the bonds in accordance with the terms of article 15 of the mortgage, declaring and establishing an equitable lien upon such earnings, and for a mandatory injunction requiring the Michigan United Railways Company to keep a separate account of the gross earnings of the property covered by the mortgage, and to pay to complainant for the sinking fund 5 per cent. thereof as soon as possible after the close of each year in the future.

At the hearing, counsel for defendants conceded that complainant was entitled to the same decree against the defendant Michigan United Railways Company that it would have been entitled to against the defendant Michigan Traction Company, if the latter had not sold its property to the former. Also, at the hearing, complainant asked the court, at this time, to determine its right to an accounting, and to a decree for 5 per cent. of the gross earnings of the properties for each year since 1904, and further asked that the questions relating to its right to an equitable lien and a mandatory injunction be reserved for future consideration and determination.

[1] The issues of law in this case are sharply defined. Complainant contends that, independently of the usual rights of foreclosure and taking possession of the mortgaged property, it is entitled to have the undertaking and agreement with relation to the payment of 5 per cent. of the gross earnings of the mortgaged property to create a sinking fund for the redemption of the bonds specifically enforced, and that it cannot be compelled to foreclose the mortgage, apply for a receiver, or take possession of the mortgaged property in order to avail itself of that right. On the other hand, defendants contend that, under the terms of the mortgage, the earnings of the mortgaged property belong to them until the mortgage is foreclosed, or the mortgagee takes possession of the mortgaged property, and that, while a default on their part in the performance of the covenant and agreement relating to the sinking fund entitled complainant to declare the entire amount of the bonded indebtedness due, and to foreclose the mortgage, or to take possession of and operate the railway and its properties, until complainant does either foreclose or take possession, it has no right nor title to any portion of the tolls and earnings of the railway property, and, all of such earnings having been expended in the operation or in necessary improvements and betterments of the mortgaged property, complainant has, at this time, no right either to any portion of such earnings or to an accounting concerning them.

In support of their contentions defendants rely upon Gilman v. Illinois & Missouri Telegraph Co., 91 U. S. 603, 23 L. Ed. 405, Sage v. Memphis & Little Rock Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887, 31 L. Ed. 694, U. S. Trust Co. v. Wabash Western Railway Co., 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085, American Bridge Co. v. Heidelbach, 94 U. S. 798, 24 L. Ed. 144, Mississippi Valley & Western Railway v. U. S. Express Co., 81 Ill. 534, and kindred cases, all of which hold, in substance, that, in the absence of special covenants, a mortgagee of corporate property, to whom its income is also pledged by the mortgage, is not entitled to such income until he takes or demands possession of the property or secures the appointment of a receiver. These and like cases are readily distinguishable from the present one, in that none of them involved a specific and special covenant or agreement on the part of the mortgagor such as is contained in the mortgage here under consideration. In Freedman's Saving Co. v. Shepherd, 127 U. S. 494, at page 502, 8 Sup. Ct. 1250, at page 1254 (32 L. Ed. 163), the Supreme Court, while affirming the general rule as above stated, says:

"It is, of course, competent for the parties to provide, in the mortgage, for the payment of rents and profits to the mortgagee, while the mortgagor remains in possession."

Complainant's bill is not founded upon the provisions of the original mortgage as it existed before the amendment, but, on the contrary, is based entirely upon the specific and personal covenant and agreement contained in the supplemental mortgage. To sustain the contention of defendants would be to hold that the supplemental indentures of February 8 and July 25, 1901, add nothing to the undertakings and obligations of the mortgagor and to the protection of the bondholders or the mortgagee, and that the parties to such undertakings and agreements have utterly failed to accomplish their evident purpose in making and entering into them. It is conceded that the supplemental instruments were made and executed pursuant to the requirements of the seventh subdivision of the original mortgage, which provides that:

"The railway company further agrees to make, execute, acknowledge, and deliver from time to time hereafter during the existence of this trust all such further instruments and conveyances of the property, rights, privileges, and franchises hereby conveyed or intended so to be as in the opinion of the counsel of the trustee may be necessary to facilitate the execution of this trust, or to further secure the rights and remedies of the holders of said bonds hereunder."

The defendants now say that, notwithstanding the express covenant and promise of the railway company to pay to the trustee a specified part of its earnings in order to further secure the payment of its bonds and to further protect its bondholders, the supplemental indentures laid upon the railway company no enforceable obligation, furnished the bondholders no additional security, and conferred upon the trustee no additional right, except that of foreclosing the mortgage or taking possession of the mortgaged property upon the breach of such covenant, the exercise of which right would in itself be destructive of the sinking fund and its purpose.

The covenant or agreement here under consideration is no different in principle from the covenants of the mortgagor to pay interest, insurance, and taxes, and to maintain and operate the railway and its equipment, so as not to forfeit or jeopardize its franchises. A breach of any of these covenants would warrant and authorize the trustee to foreclose or to take possession. But the mortgagor, by committing a breach of one or all of these covenants, cannot compel the trustee either to foreclose or to take possession. On the contrary, the trustee may refuse to foreclose or to take possession, and may resort to any other lawful means of enforcing the performance of the mortgagor's agreements. It may bring suit for the interest, may pay the taxes and bring suit for the amount so paid, may procure and pay for insurance and bring suit for the amount of the premiums, and may ask the aid of a court of equity to compel the mortgagor to perform its agreements with reference to maintaining and operating its property so as to protect and continue its franchises. Texas & Pacific Railway Co. v. Marlor, 123 U. S. 687, 8 Sup. Ct. 311, 31 L. Ed. 303; Dow v. Memphis R. R. Co. (C. C.) 20 Fed. 260; Guardian Trust Co. v. White Cliffs Portland Cement Co. (C. C.) 109 Fed. 523; Knickerbocker Trust Co. v. City of Kalamazoo et al. (C. C.) 182 Fed. 865; Land Title & Trust Co. v. Asphalt Co. (C. C.) 121 Fed. 192; Crane v. Peer, 43 N. J. Eq. 553, 4 Atl. 72; Manning v. Railroad Co. (C. C.) 29 Fed. 838.

[2] The general rule is that for a default in the payment of money at the time and place agreed upon, or of any other breach of a contract, an action at law may be maintained and a judgment for damages may be recovered against the obligor. Kimber v. Gunnell Gold Min. & Mill. Co., 126 Fed. 137, 61 C. C. A. 203. In the present case, the necessity for an accounting and other equitable relief requires that the suit be brought in a court of equity; but the applicable rule of law remains unchanged.

[3] The trustee, independently of the provisions of the trust deed, has the power, and it is its duty, whenever the necessity arises, to invoke the aid of a court of equity to preserve the trust estate, and this power cannot be abridged or restricted even by agreement of the parties. Old Colony Trust Co. v. City of Wichita (C. C.) 123 Fed. 762; Guaranty Trust Co. v. Green Cove Springs Co., 139 U. S. 137, 11 Sup. Ct. 512, 35 L. Ed. 116.

[4] Defendants concede that under the terms of the mortgage they have, among others, two express duties to perform: (1) To maintain, keep, and improve the railroad and equipment so that the service required by the franchises may be furnished; and (2) to pay to the trustee an amount not less than 5 per cent. of the gross earnings of the mortgaged property as a sinking fund for the redemption of the bonds. They say, however, that in the performance of the first of these duties all funds derived from the income of the mortgaged property have been exhausted, and therefore the trustee is not entitled either to payment of, or to an accounting concerning, the moneys due from them for the sinking fund. Reduced to its last analysis, their argument is that, having two obligations equally binding, and being unable to meet both, the performance of one cancels their duty to

perform the other. The inability of the debtor to meet his obligations may, and often does, postpone and defeat the collection of the just claims of his creditors; but such inability to pay is not a good defense to an action against him founded upon his debt. He cannot thus prevent a judgment or decree against him, even though such judgment or decree may not prove to be collectible. Nor can a debtor successfully resist the payment of his obligations upon the plea that he has used his funds in another way and for another purpose beneficial to his creditor. The parties have agreed that it was necessary to use the entire income of the railway in operating expenses and in improvements and betterments, and it is undoubtedly true that the improvements, betterments, and extensions so made have been beneficial to the defendants and to the bondholders, enhancing the value of the property of the former and increasing the security of the latter. But it is equally true that by the terms of the mortgage the defendants obligated themselves, not only to make necessary improvements, betterments, and extensions, but also to increase the security of the bondholders by the payment of 5 per cent. of the gross earnings to the trustee as a sinking fund for the redemption of the bonds. The creation of such sinking fund will be beneficial to the bondholders, and equally so to the defendants and any junior incumbrancers. The trustee has not waived its right to a sinking fund, but, on the contrary, has always insisted that the defendants should perform their agreement in that regard, and is now entitled to the aid of this court to compel the performance of such agreement.

Having expressly obligated themselves to pay to the complainant annually 5 per cent. of the gross earnings of the mortgaged property, and having failed to make such payments, and having so mingled the funds that the amount of such payments cannot be ascertained without an accounting, complainant is entitled to an accounting to ascertain the amount which is due to it at this time, and to a decree for such amount when ascertained. A decree will be made accordingly.

By express stipulation the rights of complainant to a lien upon the funds of defendants and to injunctive relief are not before the court.