NEWLANDER, Trustee, Respondent, vs. RIVERVIEW REALTY
COMPANY and others, Defendants: BURKE, Appellant.
(No. 138.)

STATE EX REL. NEWTON and others, Petitioners, vs. CIRCUIT
COURT and others, Respondents.

*May 20—June 12, 1941.*

212

216

For the appellant in the first-entitled case there was a brief by *Hersh & Morse,* attorneys, and *Arthur Magidson* of counsel, all of Milwaukee, and oral argument by *Mr. Emil Hersh* and *Mr. Magidson.*

*Lorin L. Kay* of Milwaukee, for the petitioners in the second-entitled case.

For the respondents in the both cases there was a brief by *Affeldt & Lichtsinn,* attorneys, and *Eldred Dede* of counsel, all of Milwaukee, and oral argument by *George Affeldt.*

ROSENBERRY, C. J.    Upon this appeal the purchaser Burke contends that the title to the premises is defective for the reason that Mr. Newlander, the trustee, did not have au-

thority from all of the bondholders to bid in the property, nor did he have authority from all of the bondholders to sell; that in fact the record shows objections on behalf of bondholders to the sale.

Counsel for the purchaser Burke also point out that there is a conflict of authority with respect to the power of the court to authorize a trustee to bid under the circumstances disclosed in this case, and that there is authority to the effect that a court of equity cannot authorize a trustee to bid, and for these reasons the trial court was in error, in adjudging that the title was merchantable. No other defect in the title is urged upon our consideration.

It is true that the question presented in this case has not been passed upon by this court, but in *Marshall & Ilsley Bank v. Guaranty Investment Co.* (1934) 213 Wis. 415, 417, 422, 250 N. W. 862, it was said:

"The question involved in this case is whether the trustee under a trust deed to secure a bond issue, who by the trust deed has the right, but not the obligation, to advance money to repair defaults by the mortgagor, and to whom is reserved a lien for such advances prior to the lien of the trust deed, has so acted with respect to the discharge of his obligations as trustee as to disentitle him to the advantage stipulated for in the trust deed."

In disposing of this question the court said:

"At this point it may be noted that not only in this case but in many other cases, the trustee is not an impartial person interested merely in his compensation or fee, but an actual promoter of the enterprise whose property forms the security for the bond issue. It would be intolerable to limit such a trustee merely to the obligation imposed by the terms of the contract made and drafted by it, and rarely ever seen by the bondholders. It is our conclusion that the trustee under a bond issue does owe to the bondholders certain duties independently of the terms of the trust deed, and that these duties will be imposed regardless of any exculpatory provisions in

the trust deed. Such a trustee has an obligation to exercise good faith as well as ordinary vigilance and intelligence in protecting the interests of the bondholders."

This determination recognizes the principle that a mortgage trustee as such has certain duties and obligations not specified in the trust instrument. What these duties are will depend upon the facts of the particular case.

In this case the trustee considered it necessary to bid at the sheriff's sale in order to protect the interests of the bondholders in the security foreclosure. He therefore sought instructions from the court with respect thereto. In doing this he was in the position of an ordinary trustee seeking instructions from a court of equity as to the proper execution of his trust. By his request for instructions he did not seek to be vested with any new powers. As trustee he had a power in trust to foreclose the security for the benefit of the bondholders, and this included as a necessary incident the same power to bid at the foreclosure sale that any mortgagee or holder of a security has, subject, of course, to his equitable duty to exercise this power for the benefit of the bondholders. *Oster v. Buildings Development Co.* (1934) 213 Wis. 481, 488, 252 N. W. 168. When the court in response to the trustee's request authorized him to bid in the property at sheriff's sale for an amount not exceeding the bonds, interest, and charges, for the benefit of all the bondholders, this constituted merely an ordinary response to a trustee's request for instructions. It is not necessary here to consider the extent to which such instructions constitute a defense in the trustee against charges of want of diligence because that matter is not in issue. Neither is it necessary to set forth the circumstances under which a trustee ought to seek authority from a court to bid at a sheriff's sale because in this case the trustee did seek this authority. The important question is the source of the trustee's power to bid, and we hold that source to be the trust deed and not the order of the circuit court. In the

case of *Detroit Trust Co. v. Stormfeltz-Lovely Co.* (1932) 257 Mich. 655, 242 N. W. 227, 88 A. L. R. 1263, the supreme court of Michigan held that an act of the legislature authorizing administration in equity of a mortgage trust which provided for a bidding in of mortgaged property for bondholders impaired the obligation of the contract as to nonassenting bondholders and was therefore invalid. Apparently the supreme court of Michigan applied to the situation the law applicable to testamentary or other express trusts, and held that in the absence of some exigency or emergency no court could be empowered to modify the trust instrument. It seems to us that this conclusion overlooks the fact that there is a clear distinction between a trust deed which is a mortgage and a testamentary or other express trust instrument not involving the mere holding of property as security for the discharge of an obligation. While there is no provision in the trust instrument in this case authorizing the trustee to bid, he may and under certain circumstances is required to proceed with the foreclosure of the trust instrument. He is therefore authorized to commit the entire matter to the jurisdiction of a court of equity. It is a well-established principle in equity jurisprudence that when a court takes jurisdiction it takes it for all purposes. While it is true as counsel contends that there are two lines of authority, we are of the view that a trustee has certain duties which are implied from the terms of the trust deed,—that is the import of the decision in *Marshall & Ilsley Bank v. Guaranty Investment Co., supra.* The arguments on each side of the question for decision are persuasive but of necessity we must make a choice. So far as the record here discloses there was no other bid at the foreclosure sale than that of the trustee. It is a matter of common knowledge that many properties are sacrificed for a small part of their real value on foreclosure sale. Innumerable bondholders' committees have been formed to protect bondholders against such an eventuality.

If the circumstances are such as warrant the trustee in believing that unless something more is done than merely offering the property for sale it will be sacrificed, it is considered it is within the equity power of the court to authorize the trustee to do what was done in this case, that is, to bid in the property for a sum not exceeding the par value of the bonds with interest and charges. Having authorized the trustee to bid, and the trustee having been the purchaser of the property, it was the duty of the trustee under the direction of the court to proceed to sell it. How long and under what circumstances a trustee would be authorized in holding and operating a property would be dependent upon circumstances. It is said in some of the cases that the bondholders are entitled to have the property disposed of according to the letter of the bond. We see no more difficulty from a constitutional standpoint in sustaining the power of a court of equity to do what was done in this case than it is to sustain the power of the legislature to enact moratorium legislation. The ultimate object of both procedures is to prevent losses by improvident sale in a dead market of property pledged to secure the payment of obligations. Certainly a court of equity is not obligated by contract to proceed in any particular way. What it is authorized to do is to proceed with the foreclosure in the exercise of its equity jurisdiction. That a court of equity has such power has been held in the following cases: *Hoffman v. First Bond & Mortgage Co.* (1933) 116 Conn. 320, 164 Atl. 656; *Nay Aug Lumber Co. v. Scranton Trust Co.* (1913) 240 Pa. 500, 87 Atl. 843; 7 Fletcher Cyc. Corp. (perm. ed.) p. 469, § 3313; 19 C. J. S. p. 891, § 1210; Restatement, Trusts, § 231 (h); *First Nat. Bank v. Neil* (1933), 137 Kan. 436, 88 A. L. R. 1252; *Silver v. Wickfield Farms, Inc.* (1929) 209 Iowa, 856, 227 N. W. 97.

*Contra: Werner, Harris & Buck v. Equitable Trust Co.* (1929) 35 Fed. (2d) 513; *Christ v. Collins* (1937), 211 Ind.

474, 6 N. E. (2d) 698; *Detroit Trust Co. v. Stormfeltz-Lovely Co.,* already cited; *Cosmopolitan Hotel Co. v. Colorado Nat. Bank of Denver* (1934), 96 Col. 62, 40 Pac. (2d) 245, 96 A. L. R. 1446; *Chicago Title & Trust Co. v. Robin* (1935), 361 Ill. 261, 198 N. E. 4.

The opposing views may be stated as follows: In the *Detroit Trust Co. Case, supra,* the supreme court of Michigan said (p. 664):

"A bondholder has a right to insist upon his contract, even if eventually he should fare worse by insisting upon his share of a sale for cash, together with a right to look to the responsibility of the mortgagor for a proportionate share in the deficiency. He is not bound to become an owner in common of a beneficial interest in a trust which may run on for many years and from which he may realize cash, stocks, bonds, or other securities that eventually may net him more or less than the amount he would have received had the property been sold for cash. . . .

"The bondholders are entitled to receive what their contract provided for, and cannot be compelled to take in lieu thereof a beneficial interest in a trust uncertain as to time and outcome, and not contemplated by the indenture."

In *Hoffman v. First Bond & Mortgage Co., supra,* the court said (pp. 325–327).:

"The exigency which arose must be regarded as one which was so unanticipated that no express or implied provision was made for it in the mortgage, and the result reached by the court is afforded ample support in its equitable powers. 'Trustees, in carrying the trust into execution, are not confined to the very letter of the provisions. They have authority to adopt measures and to do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making them effectual. This implied discretion in the choice of measures and acts is subject to the control of a court of equity, and must be exercised in a reasonable manner.' 3 Pomeroy's Equity Jurisprudence (4th ed.), p. 2428; *New York Trust Co. v. Michigan Traction Co.* (D. C.) 193 Fed. 175, 180.

When exigencies arise which were not contemplated by the creators of the trust and which, had they been anticipated, undoubtedly would have been provided for, the court; in such emergency, may sanction acts by the trustees which, while not directed by the trust instrument, are such as the court deems the parties would have dictated had they anticipated the peculiar development.' . . .

"The order of the superior court in the foreclosure suit which preceded the present action, authorizing the trustee to bid 'for the benefit and protection of the noteholders,' was, necessarily, based upon a like implication, and was justified by the situation. The trustee was the constituted representative and protector of noteholders who are numerous, widely scattered, and unorganized, and therefore impotent to effectively protect their own interests from sacrifice at a forced sale, precipitated by a third party, in a demoralized market. . . .

"The trustee was bound to use the same diligence and care in protecting the interests of the noteholders that a prudent man would use in protecting his own interests. *Nay Aug Lumber Co. v. Scranton Trust Co., supra.* It would be absurd to regard the trustee's duty as terminated at the very time when its protection was most needed. If it had stood by and permitted the property to be sold for a fraction of its value, the trustee might have been exposed to the charge of 'supine negligence or wilful default.' "

Without subscribing to everything said in the *Hoffman Case, supra,* and all the implications that may be drawn from it, we consider the sounder rule to be embodied in this and other decisions of the same tenor to which reference has been made.[1] No doubt a court of equity would not be authorized to make a departure from the terms of the trust instrument greater than was reasonably necessary effectually to carry out the trust which is to apply the proceeds of the sale of property to the liquidation of the obligations secured thereby. Clearly a court of equity ought not to enter into a speculation

---

[1] See "Right of Trustee to Bid," Breidenbach, vol. 21, Marquette Law Review, p. 61.

in the hope of benefiting bondholders. What steps should be taken in the disposition of the property acquired on a foreclosure sale will depend upon the facts of each case. In this case there has been no dilatory procedure. The court proceeded with dispatch to dispose of the property in a way that seemed most likely to produce the best result and the order of December 26, 1940, is affirmed in all respects.

On behalf of the petitioners seeking leave to commence an action of prohibition in this court, it is urged upon the court that after the trustee had acquired title to the property, he was bound to proceed in conformity with the provisions of sec. 231.31, Stats. This section is a part of the chapter on "Uses and Trusts" and is as follows:

"The circuit court of any county in which real estate or any interest therein is held in trust may, on the petition of the person holding the same or of any person interested, authorize or require a sale, mortgage or lease thereof whenever the interests of the beneficial owners of such real estate or interest therein will be substantially promoted thereby because the same is exposed to waste or dilapidation or is unproductive, because the trustee has no money belonging to the trust to pay the taxes or assessments on the property, or for other peculiar reasons or circumstances. The proceedings for the sale of such real estate by the trustee shall be the same as are provided for in chapter 296."

It is clear from a consideration of the provisions of this section and the provisions of the chapter in which it is found that it has no application to a trust such as that under consideration in this case. Here the court in the exercise of its equity jurisdiction was proceeding with the execution of a trust for the express purpose of making a sale of the lands in order that the proceeds might be distributed to the bondholders. The idea that under such circumstances a court of equity would have to conform to the provisions of sec. 231.31, Stats., which authorizes the court to modify the provisions of an express trust, such as a testamentary or other express

trust, seems almost fantastic. It is a contention that cannot be sustained. While the trustee named in a trust mortgage has certain obligations to perform and certain limitations upon his powers, the trust is one not subject to the provisions of sec. 231.31.

Petitioners also claim that the court below should be restrained from proceeding further under the order of March 26, 1940. That order directed that the trustee be authorized to enter into a contract for the sale of the premises for $61,600. The petitioners appeared at the hearing and objected "to any sale of said premises at this time." The objection was overruled and an order entered from which no appeal has been taken. This court does not exercise its power of superintending control in cases where there is an adequate remedy by appeal. This was an order after judgment in a proceeding at the foot of the judgment and therefore was an appealable order. The petitioners not having appealed, they are bound thereby. In addition to that no question with respect to the power of the court in the premises was raised at that hearing or since. It appeared upon the oral argument that the contention of petitioners is that the present was not an advantageous time to offer the property for sale. That was a matter for the trial court to determine in the exercise of a sound discretion. The petitioners' claim is that the court must proceed in accordance with sec. 231.31, Stats., and that a sale should not be made at this time. Both contentions are overruled. We discover no reason for the exercise of the original jurisdiction of this court upon the petition made here.

Petitioners also move in this court to dismiss the appeal from the order of December 26, 1940, from which Samuel L. Burke appeals for the reason that—

"said moving parties are adverse parties to the appellant and respondent, and purport to be jointly and severally bound with the appellant by the purported judgment contained in

the order of December 26, 1940." *Stevens v. Jacobs* (1937), 226 Wis. 198, 275 N. W. 555, 276 N. W. 638.

While the language of the order dated December 25, 1940, is that of a judgment, it is in fact an order, in a proceeding at the foot of a judgment. While under the peculiar circumstances of this case it may have the effect of a judgment in that it will conclude the parties, it is not a judgment.

Sec. 270.53, Stats., is as follows:

"(1) A judgment is the final determination of the rights of parties in the action.

"(2) Every direction of a court or judge made or entry in writing and not included in a judgment is denominated an order."

Under this definition the determination of December 26, 1940, was clearly an order.

Sec. 274.12, Stats., upon which the petitioners rely, is so far as material:

"In case one of a number of parties jointly or severally bound *by the same judgment* appeals therefrom, he shall serve his notice of appeal on all parties who are bound with him by the judgment."

Clearly the language of this section does not apply to an order. As provided by sec. 274.11 (1), Stats., appeal from an order is taken—

"by serving a notice of appeal, signed by the appellant or his attorney, on the adverse party and on the clerk of the court," etc.

The notice of appeal of Samuel L. Burke was properly served upon the attorneys for the trustee and upon the clerk of the court. The motion is therefore denied.

*By the Court.*—The order of December 26, 1940, is in all respects affirmed. The motion of the petitioners to dismiss

the appeal from the order of December 26, 1940, is denied with $10 costs. The application of the petitioners for leave to commence an original action of prohibition in this court is denied with $15 costs.