Oldest THAMES, Petitioner,

v.

JUSTICES OF the SUPERIOR COURT et al., Respondents.

Civ. A. No. 74-2548-T.

United States District Court,
D. Massachusetts.

Oct. 9, 1974.

42

Mass. Defenders Committee, Malvine Nathanson, Boston, Mass., for petitioner.

Asst. Atty. Gen. David A. Mills, Boston, Mass., for respondents.

## MEMORANDUM OPINION

TAURO, District Judge.

Oldest Thames is currently awaiting trial before the Suffolk Superior Court on two indictments charging him with rape and robbery. Earlier he was tried on these same charges in the Superior Court, but that proceeding ended in a mistrial. Petitioner then sought dismissal of the indictments by the Massachusetts Supreme Judicial Court, claiming that any further prosecution of these indictments would constitute double jeopardy in violation of Massachusetts common law as well as the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States.[1] The

---

1. The Double Jeopardy Clause of the Fifth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

Massachusetts court unanimously rejected both contentions. Thames v. Commonwealth, Mass., 312 N.E.2d 569 (1974).

Petitioner now presses his constitutional claim in this court, seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and an end to any further prosecution of the charges against him.

## JURISDICTION

A threshold question is whether this court has jurisdiction to hear petitioner's claim.

28 U.S.C. § 2241(c)(3) gives district courts jurisdiction to grant habeas relief only if the petitioner "is in *custody* in violation of the Constitution or laws . . . of the United States" (emphasis supplied). Petitioner is currently free on $10,000 bail pursuant to Mass. Gen.Laws.Ann. ch. 276, § 42 (1972).

The fact that petitioner is not in *physical* custody does not deprive this court of jurisdiction. In Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), the Supreme Court defined the term "in custody" broadly to include restraints on physical liberty other than physical imprisonment "not shared by the public generally." *Id.* at 240, 83 S.Ct. at 376. And, more recently, in Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), the Court held specifically that a defendant released on his own recognizance is "in custody" within the meaning of section 2241(c)(3). *See also* United States ex rel. Russo v. Superior Court of New Jersey, 483 F.2d 7, 12 (3rd Cir. 1973); Matzner v. Davenport, 288 F.Supp. 636, 638 n.1 (D.N.J.1968), aff'd 410 F.2d 1376 (3rd Cir. 1969); Foster v. Gilbert, 264 F.Supp. 209, 211–212 (S.D.Fla.1967). Accordingly, this court concludes that it has jurisdiction to hear petitioner's claim.

Petitioner's complaint also meets the prerequisites of 28 U.S.C. § 2254. Petitioner is currently being held "pursuant to the judgment of a State court" as required by 2254(b) in that

he is now out on bail in accordance with the judgment of the Massachusetts Supreme Judicial Court. Neither the statute nor the cases which have interpreted it require a final judgment of *conviction* before a federal court can hear a habeas petition. *See e.g.*, Rivers v. Lucas, 477 F.2d 199, 203 (6th Cir. 1973). *Cf.* Fay v. Noia, 372 U.S. 391, 423–424, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Indeed, if petitioner does have a right not to be tried again, this court must hear his petition now. United States ex rel. Russo v. Superior Court, *supra.*

Likewise, by his appeal to the state's highest court, petitioner has exhausted his remedies under state law. 28 U.S.C. § 2254(b), (c).

## DOUBLE JEOPARDY CLAIM

With respect to the merits, petitioner's first trial was held on November 28–29, 1972. At 11:15 A. M. on the second day of the trial, the jury retired to deliberate. During the next four hours, the jury sent two messages to the judge. Then at about 3:50 in the afternoon, the jury returned to the courtroom and the following colloquy took place:

THE CLERK: Members of the jury, please stand. Mr. Foreman and members of the jury, have you agreed upon your verdict on either of the two indictments, namely Indictment No. 67322, charging the defendant Otis [sic] Thames with rape, or Indictment No. 67323, charging the defendant Otis [sic] Thames with robbery?

THE FOREMAN: We did not.

THE COURT: I have had two messages as to your inability to agree, Mr. Foreman. Is there any reasonable hope of securing an agreement?

THE FOREMAN: There is one person—

THE COURT: I don't want to know how you stand. If I send you out again to deliberate, do you think—

THE FOREMAN: Not enough evidence.

THE COURT: Very well. I will declare a mistrial.

THE CLERK: Otis [sic] Thames, the jury being unable to agree on a verdict on either of the two indictments, namely Indictment No. 67322 and 67323, the Court declares this to be a mistrial.

The Court orders you be remanded into the custody of the sheriff.

THE COURT: You are excused. Report to the central jury pool tomorrow morning.

Mr. Murphy, am I correct in assuming that your defendant is at Concord?

MR. MURPHY: Yes, your Honor. Would be please [sic] note my objection and exception to your declaring a mistrial?

THE COURT: Yes.

The trial judge's declaration of a mistrial is the basis of petitioner's double jeopardy claim.

■■ The Fifth Amendment's prohibition against placing a defendant twice in jeopardy for the same offense is a recognition of the heavy personal strain and anguish which a criminal proceeding represents for any citizen. Green v. United States, 355 U.S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). "A power in government to subject the individual to repeated prosecutions for the same offense would cut deeply into the framework of procedural protections which the Constitution establishes for the conduct of a criminal trial." United States v. Jorn, 400 U.S. 470, 479, 91 S. Ct. 547, 554, 27 L.Ed.2d 543 (1971). The Double Jeopardy Clause does not, however, guarantee that every defendant who is put to trial, must go free if the trial fails to end in a final judgment. A criminal trial "even in the best of circumstances, [is] a complicated affair to manage." *Id.* at 479, 91 S.Ct. at 554. There may be unforseeable problems that arise during the course of any trial which make its completion impossible. A defendant's right to have his trial completed before one tribunal, therefore, must give way at times to the "public's interest in fair trials designed to end in

just judgments." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). To do otherwise would place an unfair, if not insuperable, burden upon those administering the criminal justice system. Green v. United States, *supra*, 355 U.S. at 188, 78 S.Ct. 221; Keerl v. Montana, 213 U.S. 135, 137–138, 29 S.Ct. 469, 53 L.Ed. 734 (1909); Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

■ The prime responsibility for balancing these two objectives has long rested in the hands of the trial judge. Gori v. United States, 367 U.S. 364, 368, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); Brock v. North Carolina, 344 U.S. 424, 427, 73 S.Ct. 349, 97 L.Ed. 456 (1953); Lovato v. New Mexico, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244 (1916); United States v. Perez, *supra*. As recently as 1973, the Supreme Court reaffirmed its long standing support of this concept (Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425), quoting at length from the standard expression of it formulated by Mr. Justice Story:

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound,

and conscientious exercise of this discretion rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office. *Perez, supra,* 22 U.S. (9 Wheat.) at 580.

In *Perez,* the Court went on to find that "manifest necessity" and "the ends of public justice" justified the discharge of juries unable to reach verdicts, and, therefore, the Double Jeopardy Clause did not bar retrial. *Cf.* Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

The petitioner does not question the continued validity of the *Perez* rule or of the subsequent cases which have upheld it. *See, e. g.,* Illinois v. Somerville, *supra.* Rather, he maintains that in the instant case, the jury was not actually deadlocked and that the trial judge abused his discretion by failing to allow the jurors to continue their deliberations.

The claim is not a novel one. In United States v. Lansdown, 460 F.2d 164 (4th Cir. 1972), the court held that a trial judge had abused his discretion by discharging a jury after having been informed that it was on the verge of reaching a verdict. And in United States ex rel. Russo v. Superior Court of New Jersey, 483 F.2d 7 (3rd Cir. 1973), a different court of appeals reached a similar result after a judge declared a mistrial because he believed the jury was fatigued, even though there was no indication that the jurors were either overtired or deadlocked. *But see* United States v. Phillips, 431 F.2d 949 (3rd Cir. 1970); Grogan v. United States, 394 F.

2d 287 (5th Cir. 1967); Marienfeld v. United States, 214 F.2d 632 (8th Cir. 1954); United States v. Medina, 323 F. Supp. 1277 (E.D.Pa.1971).

The facts of this case, however, present a vastly different picture. During the time the jury was deliberating the judge was informed twice that its members were unable to agree. When the jury returned to the courtroom, he made an effort to determine whether there was any reasonable hope for a verdict. *Cf.* Jorn v. United States, *supra.* In response to his inquiries, the judge learned that at least one juror was simply unable to agree that there was enough evidence to convict the petitioner. Under these circumstances, and against the backdrop of the earlier messages which he had received, the judge doubtless concluded that there was little else that could be done to secure a verdict. On that basis, he declared a mistrial.

In retrospect, perhaps it would have been better had the judge placed the contents of the jury's two communications on the record or insisted upon a clearer answer from the foreman. But on these facts it does not appear that the judge's on-the-scene assessment of the situation was an unreasonable one or that he abused "[t]he broad discretion [traditionally] reserved to the trial judge in such circumstances."[2] Illinois v. Somerville, *supra,* 410 U.S. at 462, 93 S.Ct. at 1069. Accordingly, petitioner's request for a Writ of Habeas Corpus is denied.[3]

---

2. In evaluating a trial judge's exercise of discretion in this area, the length of time the jury has deliberated is not crucial. *Compare* United States v. Jim Lee, 123 F. 741 (N.D. Cal.1903) (mistrial upheld after 1 hour 35 minutes of deliberation) *with* DeGrandis v. Fay, 335 F.2d 173 (2d Cir. 1964) (trial judge upheld after allowing jury to deliberate 24 hours without sleep).

3. Because of the view which we take of the merits, there is no occasion to consider what

effect, if any, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny have on our ability to fashion relief in this situation. The question has been a controversial one. *Compare* Rivers v. Lucas, 477 F.2d 199 (6th Cir. 1973), vacated on other grounds, 414 U.S. 896, 94 S. Ct. 232, 38 L.Ed.2d 139 (1973) *with* Ward v. Page, 424 F.2d 491 (10th Cir. 1970), cert. denied, 400 U.S. 917, 91 S.Ct. 178, 27 L.Ed. 2d 157 (1970).