STATE, Plaintiff-Respondent, v. KENDALL, Defendant-Appellant.

Supreme Court

*No. 77–146–CR. Submitted on briefs December 5, 1979.—*
*Decided February 7, 1980.*
(Also reported in 287 N.W.2d 758.)

For the appellant the cause was submitted on the brief of *Donald S. Eisenberg* and *Eisenberg, Giesen & Ewers* of Madison.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Wm. L. Gansner,* assistant attorney general.

SHIRLEY S. ABRAHAMSON, J. In April, 1977, William Kendall, the defendant, was tried on the charge of delivery of a controlled substance, cocaine, party to

a crime, contrary to secs. 161.41 (1) (b) and 939.05, Stats. After the jury had deliberated for many hours and failed to reach a verdict, the court concluded that "the jury is hung," declared a mistrial, and discharged the jury.

On July 6, 1977, the defendant moved to dismiss further prosecution on the ground that a second trial would place him twice in jeopardy contrary to the federal[1] and Wisconsin[2] constitutions. The motion was denied on July 19, 1977, and the defendant filed a notice of appeal to this court on July 20, 1977. We affirm the order of the circuit court denying defendant's motion to dismiss.

## I.

The first question is whether an order denying a motion to dismiss on double jeopardy grounds is appealable. This appeal rose prior to the creation of the court of appeals on August 1, 1978 and is one of the last cases which this court is deciding under the former code of procedure.[3] Because an interpretation of what constitutes an "appealable order" under the former code of procedure is not of significance in the future, we need not labor over deciding the question of the appealability of the order. We conclude that this court can and should decide the issue of double jeopardy by exercise of its super-

[1] The Fifth Amendment to the United States Constitution provides:

"No person shall be . . . subject for the same offense to be twice put in jeopardy of life and limb."

[2] Art. I, sec. 8, of the Wisconsin Constitution reads:

". . . no person for the same offense shall be put twice in jeopardy of punishment, . . . ."

[3] See State v. Harrell, 85 Wis.2d 331, 270 N.W.2d 428 (Ct. App. 1978), in which the state, relying upon Abney v. United States, 431 U.S. 651 (1977), conceded that the order denying defendant's motion to dismiss on double jeopardy grounds was appealable.

intending authority. This matter has been pending before this court for more than two years; the parties have briefed the merits of the double jeopardy issue.

As we explained in *McEwen v. Pierce County*, 90 Wis. 2d 256, 269–270, 279 N.W.2d 469 (1979), the court may treat an appeal as a proceeding seeking this court's exercise of its superintending power:

"... This court can review the circuit court's order by the exercise of its 'superintending . . . authority over all courts.' Art. VII, sec. 3, Wis. Const. The power of superintending control is exercised in order to 'restrain the excesses and quicken the neglects of inferior courts in the absence of other remedy.' *State ex rel. Fourth Nat. Bank of Philadelphia v. Johnson*, 103 Wis. 591, 618, 79 N.W. 1081 (1899).[8] This court will not exercise its superintending power where there is another adequate remedy, by appeal or otherwise, for the conduct of the trial court, or where the conduct of the trial court does not threaten seriously to impose a significant hardship upon a citizen. *State ex rel. Tewalt v. Pollard*, 112 Wis. 232, 234, 87 N.W. 1107 (1901); *Newlander v. Riverview Realty Co.*, 238 Wis. 211, 225, 298 N.W. 603 (1941).

"Although the parties characterize this matter as an appeal, this court can look to the substance of the matter and treat the proceeding as one seeking the court's exercise of its superintending authority. Conway, *Wisconsin & Federal Civil Procedure* sec. 71.01, ch. 73 (2d ed. 1976). Although this superintending power is often exercised by the writs of mandamus, prohibition, and certiorari, we have said that in exercising the superintending power this court is not limited to the use of common-law writs and is limited only by the necessities of justice. This court may use common law writs as are applicable or expand the ordinary use of such writs to meet the exigencies of the case before it. *State ex rel. Reynolds v. County Court*, 11 Wis.2d 560, 565, 105 N.W. 2d 876 (1960).

"We conclude that this court should reach the merits of the issue presented pursuant to its superintending authority. For this court to decline to reach the issue

. . . and to tell the parties that they may raise the issue again at a later stage of the proceedings would be to cause delay, additional expense, and unnecessary multiplicity of appeals. . . ."

"[8] In *State ex rel. Reynolds v. County Court*, 11 Wis.2d 560, 564, 105 N.W.2d 876 (1960), we described our superintending power as follows:

" 'Sec. 3, art. VII, Const., grants three separate powers to this court: Appellate jurisdiction, general superintending control over all inferior courts, and the power to issue the "high writs" and other original and remedial writs. The nature and scope of the superintending power of this court has been discussed and explained from the earliest times. *Attorney General v. Blossom* (1853, 1 Wis. 277 (*317); *Attorney General v. Railroad Companies* (1874), 35 Wis. 425; *State ex rel. Fourth Nat. Bank of Philadelphia v. Johnson* (1899), 103 Wis. 591, 79 N.W. 1081; *State ex rel. Umbreit v. Helms* (1908), 136 Wis. 432, 118 N.W. 158. The rule established in these cases is well stated in *State ex rel. Fourth Nat. Bank of Philadelphia v. Johnson,* page 618:

" ' ". . . the constitutional grant of superintending control over all inferior courts vested in this court an independent and separate jurisdiction enabling and requiring it, upon sufficient occasion, by the use of all proper and necessary writs to promptly restrain the excesses and quicken the neglects of inferior courts in the absence of other adequate remedy, . . ." '

"*See also* Wickhem, *The Power of Superintending Control of the Wisconsin Supreme Court,* 1941 Wis. L. Rev. 153; sec. 809.51, Stats.; Martineau & Malmgren, *Wisconsin Appellate Practice* ch. 29 (1978).

"The court of appeals is granted 'supervisory authority over all actions and proceedings in the courts in the district.' Art. VII, sec. 5, Wis. Const."

For the reasons expressed in *McEwen,* we reach the issue of double jeopardy in the case at hand.

## II.

We turn now to the merits of defendant's claim that further prosecution is barred by the double jeopardy clauses of the state and federal constitutions.

Jeopardy had attached at the time the mistrial was declared.[4] The facts and circumstances of the case must be examined to determine if further prosecution is permissible. A brief description of the context in which the mistrial was declared by the circuit court follows. On April 12, 1977, several days prior to trial, defense counsel filed a "Motion to Compel Election of Charge and Motion in Limine," requesting that the district attorney be required to elect one subsection of sec. 939.05 (2), Stats., "party to the crime," under which the state was going to proceed and to limit evidence according to the state's election. Sec. 939.05, Stats., provides:

"939.05 **Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

An affidavit by defense attorney was attached to the motion stating that because the defendant did not know

---

[4] *See State v. Jenich,* 94 Wis.2d 74, 83, 288 N.W.2d 114 (1980).

under which subsection the district attorney was proceeding the defendant was being denied due process. Before the jury trial began on April 18, 1977, defendant's motion was denied.

At trial there was testimony that an informant had asked the defendant if he knew anyone who could get him cocaine; that the defendant got Mr. Gonzales involved in the drug transaction; that the prospective buyers were law enforcement officers; and that the defendant apparently wanted to call off the deal and withdraw before the cocaine was purchased.

Over defendant's objection the jury was instructed with regard to both the aiding and abetting and conspiracy parts of sec. 939.05, Stats., much of the language of the instruction being taken from Wisconsin Criminal Jury Instruction No. 400, Parties to Crime. Because sec. 939.05(2)(a), Stats., "directly commits the crime," was not mentioned to the jury, the court, in its instructions, labeled aiding and abetting (*i.e.* sec. 939.05(2)(b), Stats.) as "A" and conspiracy (*i.e.* 939.05(2)(c), Stats.) as "B."

During deliberations, the jury made several written requests of the court. The first request stated:

"*Your Honor:*
"If we decide that he is not guilty under the conspiracy point, is it possible for us to find him guilty under the aiding and abetting point?
"Is withdrawing a factor under aiding and abetting?"

The record is not clear whether the court responded to those two questions.

The court received a second set of questions from the jury at 5:15 p.m.:

"1. Are we to consider point A of the law separately from point B?
"2. Does either point A or point B supersede the other?

"3. Does the 'intent to withdraw' provision of the law apply solely to conspiracy, or does it also apply to aiding and abetting?"

Without consulting counsel, the court at 5:20 p.m. gave to the jury in typed form part of the jury instructions which were almost identical to the wording of sec. 939.05(2)(b) and sec. 939.05(2)(c), Stats.

At 10:20 p.m. the jury requested the reading of part of the cross-examination testimony of one of the state's witnesses concerning a telephone call between the defendant and Mr. Gonzales. The court responded, "I am sorry, but I feel that reading only a small portion of the testimony would unduly emphasize that evidence in relation to the remainder."

At approximately 11:35 or 11:40 p.m. the court sent a written question to the jury: "Ladies and gentlemen, do you feel that with further deliberation you can reach a unanimous verdict?" At 12:20 a.m. the jury responded: "Your Honor: No." At that time the jury had deliberated for approximately ten hours.

After summarizing this interchange of questions and answers on the record, the circuit court stated:

"I guess my reaction at this point, which would be a personal reaction, would be to declare a mistrial. Does the State have any position?

"[The prosecutor stated] : No, Your Honor.

"*The Court:* Mr. Giesen? [one of the defense attorneys]

"*Mr. Giesen:* We move for dismissal then.

"*The Court:* I don't think I can do that, at least as a result of this at any rate. All right, do you want to make anything on the record with respect to any of the rest of the matters, Mr. Giesen? I put them on the record, and I don't know if you feel that you are prejudiced by them. Effectually what you want to do, I would suppose, is perhaps make an objection to the Court's responses.

"*Mr. Giesen:* That is what I was just about to do; in effect reiterate the objections made previously on the same instructions that were submitted to the jury.

"*The Court:* Okay."

The jury was then called into the court room and the circuit court found that the jury was "hung," declared a mistrial, and discharged the jury.

After the jury was excused, the circuit court stated:

*"The Court:* I don't know what the State's position is going to be on this case, but I guess I will just, on the assumption that they will intend to pursue it, will continue the bond as previously posted.

"[The prosecutor responded]: We would inform the Court that is a correct assumption, and we will pursue it.

*"The Court:* I assumed so. Okay, thank you."

The classic justification for a mistrial is that the jury has been unable to agree. *Gori v. United States,* 367 U.S. 364, 370–371 (1961) (Douglas, J. dissenting); *Downum v. United States,* 372 U.S. 734, 735–736 (1963); *Arizona v. Washington,* 434 U.S. 497, 509–510 (1978). In *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580 (1824), the first case in which the United States Supreme Court considered the permissibility of reprosecution after mistrial, the Court held that discharge of the jury did not bar further proceedings:

". . . We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound,

and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office."

The general rule derived from *Perez* is that where there is a mistrial on the motion of the prosecution or on the court's own motion, further prosecution is prohibited unless there is a "manifest necessity for the [mistrial] or the ends of public justice would otherwise be defeated" by allowing the trial to continue. *See Arizona v. Washington*, 434 U.S. 497, 504 (1978).

The defendant does not assert in the case before us that there was a too hasty discharge of the jury or that the circuit court erred in concluding that the jury was unable to agree.[5] Thus the parties agree that there was the kind of "manifest necessity" for the mistrial ruling that will avoid a valid plea of double jeopardy.

The defendant argues, however, that the jury's failure to agree was caused by the prosecution's error in not electing one subdivision of sec. 939.05(2), Stats., under which to proceed (that is whether the defendant was an "aider or abettor" or a "conspirator") and that this was prosecutorial overreaching which bars further prosecution.

---

[5] For such a claim, *see e.g., State v. Nelson*, 234 N.W.2d 368, 375 (Iowa 1975); *State v. Pruitt*, 216 Kan. 103, 107, 531 P.2d 860, 863 (1975); *White v. State*, 23 Md. App. 151, 166, 326 A.2d 219, 228 (1974); *Jessen v. State*, 234 Ga. 791, 218 S.E.2d 52 (1975); *Commonwealth ,v. Fredericks*, 235 Pa. Super. Ct. 78, 340 A.2d 498 (1975); *United States v. Beckerman*, 516 F.2d 905 (2d Cir. 1975); *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034 (3d Cir. 1975); *United States v. Rodriguez*, 497 F.2d 172 (5th Cir. 1974); *United States v. Medansky*, 486 F.2d 807 (7th Cir. 1973), *cert. denied*, 415 U.S. 989 (1974); *United States ex rel. Russt v. Superior Ct.*, 483 F.2d 7 (3d Cir.), *cert. denied*, 414 U.S. 1023 (1973); *Thames v. Justices of Superior Court*, 383 F. Supp. 41 (D. Mass. 1974).

■ The doctrine of "prosecutorial overreaching" was developed as an exception to the general rule of permitting further prosecution after defendant's motion for a mistrial is granted. *State v. Jenich,* 94 Wis.2d 74, 92, 288 N.W.2d 114 (1980). Whether this doctrine applies in this case where the immediate cause of the mistrial is the jury's inability to agree is unclear. However, even if we were to hold that further prosecution is barred when "prosecutorial overreaching" indirectly causes a hung jury, or, to put it another way, even if we were to hold that further prosecution is barred because prosecutorial overreaching which causes a hung jury negates the "manifest necessity" for the mistrial, this case is not one of prosecutorial overreaching.

The record does not show that the prosecutor's conduct was motivated by bad faith or was undertaken intentionally to harass or prejudice the defendant so that a mistrial would result. *Lee v. United States,* 432 U.S. 23, 34 (1977); *United States v. Dinitz,* 424 U.S. 600, 611 (1976). The record can only be interpreted to show that the prosecution presented evidence on and requested instructions on both aiding and abetting and conspiracy in the good faith belief that it could lawfully do so.[6]

■ We conclude that the mistrial was caused by the discharge of a jury that was unable to agree and that accordingly there was "manifest necessity" for the mistrial. We further conclude that the record does not support defendant's contention that there was prosecutorial over-

---

[6] We need not and do not decide whether error was committed in the instructions. *See May v. State,* 91 Wis.2d 540, 549–552, 283 N.W.2d 460 (Ct. App. 1979), petition to review granted, for a discussion of instructions on conspiracy and aiding and abetting and of the unanimity requirement.

reaching which caused the mistrial. Accordingly, the defendant's double jeopardy claim is without merit, and we affirm the circuit court.

*By the Court.*—Order affirmed.