STATE of Wisconsin, Plaintiff-Respondent,

v.

Lisa KIRSCHBAUM, Defendant-Appellant.†

Court of Appeals

*No. 94-0899-CR. Submitted on briefs March 8, 1995.—Decided May 25, 1995.*

(Also reported in 535 N.W.2d 462.)

†Petition to review denied.

12

14

For the defendant-appellant the cause was submitted on the briefs of *Stephen R. Buggs* of *Karrmann, Buggs & Baxter* of Platteville.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *G. M. Posner-Weber*, assistant attorney general.

Before Dykman, Sundby, and Vergeront, JJ.

VERGERONT, J. Lisa Kirschbaum appeals from a judgment convicting her of child neglect with death as a consequence, in violation of § 948.21(1), STATS. Kirschbaum raises two issues on appeal. First, she contends the trial court improperly denied her request for permission to hire two expert witnesses. Second, she contends her constitutional right to confrontation was violated by the admission of a videotaped deposition of a child witness taken prior to a previous trial on the same charge. We reject both contentions and affirm.

## BACKGROUND

The relevant facts are undisputed. The criminal complaint alleged that on February 20, 1990, while providing day-care services for Peter Dolan, a fourteen-month-old infant, Kirschbaum tied a rag around the infant's head and mouth and left him unattended, resulting in the infant's death by suffocation.

A jury trial on the charge of child neglect with death as a consequence was conducted in September 1992. The State's principal witness was Amanda H., a child for whom Kirschbaum was also providing day-care services on the day of the infant's death. Amanda H. did not testify at trial, but her videotaped deposition

18

was admitted pursuant to § 967.04, STATS. In her video-taped deposition, Amanda H. testified that she witnessed Kirschbaum tie a burp rag around the infant's head and face and lay the infant down next to her on the floor of a bedroom where she was taking a nap. She stated that she then fell asleep and, when she woke up, she observed Kirschbaum unsuccessfully attempting to wake the infant up. Amanda H. was five years old at the time the infant died and seven years old at the time the videotaped deposition was taken in July 1992. Following a five-day trial, the trial court declared a mistrial when the jury was unable to unanimously agree on a verdict.

A retrial on the same charge was conducted in January 1994. Kirschbaum was represented by a new attorney at the retrial. Prior to the retrial, Kirschbaum filed two motions: (1) a motion for permission to hire a child psychologist and a pediatrician, and (2) a motion asking the court to exclude Amanda H.'s videotaped deposition and to allow new testimony by Amanda H., either in person or by a second videotaped deposition. The trial court denied both motions after a hearing and Amanda H.'s videotaped deposition was admitted at the retrial. The jury convicted Kirschbaum of violating § 948.21(1), STATS., and this appeal followed.

## REQUEST FOR PERMISSION TO HIRE EXPERTS

Kirschbaum challenges the trial court's denial of her request for permission to hire the child psychologist and the pediatrician as an erroneous exercise of discretion.[1]

---

[1] The record indicates that Kirschbaum's counsel at the retrial was appointed by the court, not the State Public

An indigent defendant has a constitutional right to the state's assistance in securing the raw materials integral to the building of an effective defense. *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). This right includes the trial court's assistance in compelling the attendance of witnesses and the right to put before a jury evidence that might influence the determination of guilt. *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). However, the right to the trial court's assistance is not "an unfettered right that requires the trial court to give an indigent defendant unlimited access to blank checks to hire all expert witnesses that he or she desires." *State ex rel. Dressler v. Racine County Circuit Court*, 163 Wis. 2d 622, 639, 472 N.W.2d 532, 539 (Ct. App. 1991). The trial court does not have an unequivocal duty to provide expert witness funds for indigent defendants upon a general request. *Id.* at 641, 472 N.W.2d at 540. Rather, in order to secure the assistance of the trial court, the defendant must make a plausible showing that the proposed expert witness will be both material and favorable to his or her defense, *i.e.*, necessary. *Id.* at 640, 472 N.W.2d at 540.

The trial court's decision is discretionary. The question on appeal is not whether this court, ruling initially on the motion, would have granted it, but whether the trial court exercised its discretion in accordance with accepted legal standards and the facts of record. *See State v. Friedrich*, 135 Wis. 2d 1, 16, 398

Defender. Therefore, we do not address the procedures under §§ 977.03(2) and 977.05(4r)(a) and (b), STATS., and WIS. ADM. CODE § SPD 2.12(2), for reimbursement of expert services when the State Public Defender has assigned a staff attorney or private counsel to the case.

N.W.2d 763, 770 (1987). If a decision requires the exercise of discretion but fails to demonstrate on its face consideration of any factors on which the decision should be properly based, the decision constitutes an erroneous exercise of discretion. *State v. Johnson*, 118 Wis. 2d 472, 480-81, 348 N.W.2d 196, 200-01 (Ct. App. 1984). However, we are not required to reverse a discretionary decision if we can conclude *ab initio* that there are facts in the record that would support the trial court's decision had discretion been exercised on the basis of those facts under the correct legal standard. *Id.* at 481, 348 N.W.2d at 201.

A. Child Psychologist

According to the motion and affidavit filed with the trial court, the child psychologist would have testified on these issues:

(1) General concepts regarding memory, perception and distortion;

(2) Children not seeing things in adult perspectives and not perceiving things as an adult would perceive them;

(3) Bias and suggestion in interviewing child witnesses in general, both intentional and unintentional, and the bias or suggestion which occurred in the interviews of Amanda [H.] prior to her videotaped testimony;

(4) Amanda [H.'s] inconsistent statements regarding whether Peter Dolan was put in a closet or laid on the bedroom floor after the defendant allegedly tied a rag around his face.

The trial court denied Kirschbaum's request, relying primarily on *State v. Friedrich*, 135 Wis. 2d 1, 398 N.W.2d 763 (1987):

[W]hat I have got here is the very thing that I had in *Friedrich*. I have a young girl. This isn't a sexual assault case. This is not a crime against the person of Amanda [H]. But I have got a young girl who testified as to what she saw and I have got a request for a psychologist to come in and not call her a liar. They weren't trying to call the victim in the Friedrichs case a liar. All they were trying to do is say it couldn't have happened. And as you can tell . . . experience has shown in the past a psychologist did not know what he was talking about. What it would be used for would be to go towards the credibility of the child. Credibility of the child is a jury issue and for that reason, Mr. Buggs, I am going to deny your request as to the psychologist.

We conclude that the trial court's decision with respect to the issues of "general concepts regarding memory, perception and distortion" and "children not seeing things in adult perspectives and not perceiving things as an adult would perceive them" was within the scope of its discretion. The trial court could reasonably conclude that these are matters within the knowledge and general experience common to every member of the community, and that the jury's consideration of these issues would not be aided by the testimony of a psychologist. *See, e.g., State v. Blair*, 164 Wis. 2d 64, 77, 473 N.W.2d 566, 572 (Ct. App. 1991); *cf. Hampton v. State*, 92 Wis. 2d 450, 459, 285 N.W.2d 868, 872 (1979) (trial court allowed psychologist "to inform the jury of the psychological principles underlying human observation and perception, but left to the jury itself the task of

22

applying those principles to the specific facts of [the] case").

We also conclude that the trial court's decision with respect to the issue of "Amanda [H's] inconsistent statements" was within the scope of its discretion. It is well established that the credibility of witnesses, including child witnesses, and the weight assigned to their testimony are matters for the jury's judgment. *Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 681, 280 N.W.2d 226, 230 (1979). The trial court could reasonably conclude that the jury could draw its own conclusions on Amanda H.'s allegedly inconsistent statements and that this was something the jury could knowledgeably determine without the help of expert testimony. *See State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984).

A different analysis is required with respect to the issue of improper interview techniques allegedly used with Amanda H. *Friedrich* did not address this issue. There, our supreme court held that the trial court did not erroneously exercise its discretion in excluding a psychologist's testimony that the accused did not fit the "psychological profile" of known incestuous sex offenders on the ground that the testimony would usurp the jury's role of assessing credibility. *Friedrich*, 135 Wis. 2d at 16, 398 N.W.2d at 770.

While the issue has not been addressed in Wisconsin, many jurisdictions recognize that young children can be susceptible to suggestive interview techniques and that such techniques can undermine the reliability of a child's account of actual events. *See, e.g., Idaho v. Wright*, 497 U.S. 805, 812-13 (1990); *Maryland v. Craig*, 497 U.S. 836, 868 (1990) (Scalia, J., dissenting); *State v. Michaels*, 642 A.2d 1372, 1379 (N.J. 1994);

*People v. Michael M.*, 618 N.Y.S.2d 171, 177 (N.Y. Sup. Ct. 1994); *Territory of Guam v. McGravey*, 14 F.3d 1344, 1348-49 (9th Cir. 1994). The concern is that persons conducting interviews with the child will, either inadvertently or purposefully, suggest facts and promote fantasies that the child will later "remember" and testify to as the truth. *See* John R. Christiansen, *The Testimony of Child Witnesses: Fact, Fantasy, and the Influence of Pretrial Interviews*, 62 Wash. L. Rev. 705, 707 (1987).

Many jurisdictions also recognize the utility of expert testimony on the suggestive interview techniques used with a young child and how suggestive techniques can shape a young child witness's answers. *See, e.g., Michaels*, 642 A.2d at 1384 ("Experts may thus be called to aid the jury by explaining the coercive or suggestive propensities of the interviewing techniques employed"); *State v. Malarney*, 617 So.2d 739, 740 (Fla. Dist. Ct. App. 1993) (reversible error to exclude defendant's expert psychological testimony on unreasonably suggestive interviewing techniques used with victim); *Michael M.*, 618 N.Y.S.2d at 177 ("In recognition of a child's suggestibility, many courts have allowed the admission of expert testimony at trial on the effects of suggestive questioning"); *McGravey*, 14 F.3d at 1348-49 (although concluding that a jury instruction on the suggestibility of children was not required, recognized that "[defendant] also could have, but did not, present expert testimony on the issue of . . . the susceptibility of children to suggestion"); *Sheldon v. State*, 796 P.2d 831, 839 (Alaska Ct. App. 1990); *People v. Diefenderfer*, 784 P.2d 741, 753 (Colo. 1989); *Timmons v. State*, 584 N.E.2d 1108, 1112-13 (Ind. 1992); *State v. Erickson*, 454 N.W.2d 624, 626 (Minn. Ct. App. 1990); *State v. Floody*, 481 N.W.2d 242, 248

(S.D. 1992); *United States v. Geiss*, 30 M.J. 678, 681 (A.F.C.M.R. 1990).

■

We recognize that in Wisconsin, no witness, expert or otherwise, should normally be permitted to testify that a witness is or is not telling the truth, unless the witness whose credibility is at issue suffers from a physical or psychological disorder. *See Friedrich*, 135 Wis. 2d at 16-17, 398 N.W.2d at 770; *Haseltine*, 120 Wis. 2d at 96, 352 N.W.2d at 676. This is because the credibility of a witness is ordinarily something a lay juror, having the knowledge and general experience common to every member of the community, can determine on his or her own. *Haseltine*, 120 Wis. 2d at 96, 352 N.W.2d at 676. However, the purpose of the child psychologist's testimony in this case was allegedly to discuss the procedures and techniques used in pretrial interviews with Amanda H. and how these procedures and techniques may have affected the reliability of the child's recollections. This is a subject with which a lay juror may be unfamiliar. Moreover, while cross-examination alone is normally sufficient to test the reliability of a witness's account of events, cross-examination of a child witness could be ineffectual if the child sincerely takes his or her recollections to be grounded in facts and does not remember the improper interview procedures which may have suggested them. *See* John R. Christiansen, *The Testimony of Child Witnesses: Fact, Fantasy, and the Influence of Pretrial Interviews*, 62 Wash. L. Rev. 705, 708 (1987).

■

We find the cases from these other jurisdictions persuasive and conclude that, in some cases, it may be an erroneous exercise of discretion to deny an indigent defendant's request for permission to hire an expert for

25

testimony on the issue of suggestive interview techniques used with a young child witness. Here, however, rather than making the requisite "showing of particularized need," *Dressler*, 163 Wis. 2d at 641, 472 N.W.2d at 540, there was only a broad assertion in Kirschbaum's counsel's affidavit that the psychologist would testify on the bias or suggestion that occurred in the interviews conducted with Amanda H. Kirschbaum's counsel failed to point to a single specific example of an improper interview technique that her expert would discuss such that the court could invoke its decisional process.[2] *See Dressler*, 163 Wis. 2d at 641, 472 N.W.2d at 540. Because Kirschbaum did not make a showing of particularized need for the child psychologist, the trial

---

[2] In the jurisdictions that recognize the utility of expert testimony on the suggestibility of child witnesses, the following are cited as examples of improper interview techniques or procedure: (1) the use of leading questions or incessant questioning by the interviewer; (2) the pursuit by the interviewer of a preconceived notion of what happened to the child or what the child witnessed; (3) "vilification" of the defendant; (4) the absence of spontaneous and voluntary recall of events by the child; (5) a lack of control of outside influences on the child's statements, such as ongoing contact with peers and parents; (6) the use of threats, bribes and cajoling; and (7) the failure to videotape or audiotape the initial interview sessions with the child. *See, e.g., Wright*, 497 U.S. at 812-13 (noting the conclusion of the Idaho Supreme Court that the failure to videotape interviews with child victims, the use of blatantly leading questions, and an interviewer with a preconceived idea of what happened indicate the potential for eliciting unreliable testimony); *Michaels*, 642 A.2d at 1383; *Michael M.*, 618 N.Y.S.2d at 177 (citing John Myers, *The Child Witness: Techniques for Direct Examination, Cross-Examination, and Impeachment*, 18 Pac. L. J. 801, 889 (1987)).

26

court did not erroneously exercise its discretion in denying her request for permission to hire that expert.

B. Pediatrician

Kirschbaum also requested permission to hire a pediatrician to provide expert testimony at trial on the typical actions and activities of a fourteen-month-old child and how a typical fourteen-month-old child would not submit to having a rag tied around his or her face, would not lie still on a bedroom floor, and would struggle and scratch in an attempt to remove the rag from his or her face.

The trial court denied the request, concluding that such testimony would be too speculative because of all the variables in the behavior of fourteen-month-old children. We conclude this decision was within the trial court's discretion. The trial court could reasonably conclude that the type of behavior "typical" for a fourteen-month-old child was an issue the jury could determine without the aid of an expert.

## MOTION TO EXCLUDE VIDEOTAPED DEPOSITION

Kirschbaum contends that her right to confrontation was violated when the trial court admitted a videotaped deposition of Amanda H. taken prior to the first trial and refused her request to have Amanda H. testify in person or by a second videotaped deposition. Whether a defendant's confrontation right is infringed presents a question of law, which this court reviews *de novo*. *State v. Sharp*, 180 Wis. 2d 640, 647, 511 N.W.2d 316, 319 (Ct. App. 1993).

27

Prior to the retrial, Kirschbaum's counsel filed a motion to exclude the videotaped deposition of Amanda H. taken prior to the first trial pursuant to § 967.04, STATS. He asked that Amanda H. testify at the retrial, in person or by a second videotaped deposition, so that he could have a full and complete opportunity for cross-examination. He argued that the videotaped deposition had been conducted with Kirschbaum's first attorney and that this first attorney had asked some questions of Amanda H. that he would not have asked,[3] and that the first attorney had failed to confront Amanda H. with some inconsistencies in her accounts of the incident.[4]

The trial court denied the motion, relying primarily on *White v. Illinois*, 502 U.S. 346 (1992). The trial court reasoned that under *White*, the State could have relied solely on the testimony of individuals to whom Amanda H. had recounted the incident in presenting its case, but instead "provided a videotape with confrontation being exercised." The trial court also concluded that requiring Amanda H. to participate in a

---

[3] Kirschbaum contended that her first attorney inappropriately elicited the following testimony from Amanda H. on the infant's cause of death:

Q. How did Peter die?

A. He had the rag around him and he stopped breathing.

Q. And who told you that?

A. No one.

Q. How did you figure that out?

A. I don't know.

[4] According to Kirschbaum, Amanda H. made inconsistent statements regarding whether the infant was put in a closet or put on the floor next to her on the day the infant died, and whether her sister was in the bedroom with her that day.

second videotaped deposition would lead to a "trial of videotapes," and that it was immaterial that Kirschbaum was represented by different counsel at the retrial.

The trial court's reliance on *White* for admitting the videotaped deposition was incorrect. The issue in *White* was whether the admission of testimony from individuals to whom the child had made statements violated the defendant's confrontation rights under the Sixth Amendment to the United States Constitution when the child was not unavailable to testify. In admitting the testimony, the trial court had relied on hearsay exceptions for spontaneous declarations and for statements made in the course of securing medical treatment. The Court held that the Confrontation Clause did not require the prosecution to produce the child or require the trial court to find that the child was unavailable in order to admit the testimony because: (1) the hearsay exceptions relied upon were firmly rooted, and (2) the child's statements admitted under the hearsay exceptions were not made in the course of a prior judicial proceeding and had substantial probative value that could not be duplicated simply by having the child later testify in court.

Here, unlike in *White*, the child testified, although via a videotaped deposition. *White* does not stand for the proposition that because the State could have relied solely on the testimony of individuals to whom Amanda H. made statements in presenting its case, Kirschbaum was not entitled to her full confrontation rights when Amanda H. testified. However, we conclude, on other grounds, that Kirschbaum's confrontation rights were not violated.

29

The Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[5] "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause serves a three-fold purpose. First, it ensures that the witness will give his or her statement under oath, thus impressing upon the witness the seriousness of the matter and guarding against the possibility of perjury. *California v. Green*, 399 U.S. 149, 158 (1970). Second, it forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth." *Id.* Finally, it permits the jury to observe the demeanor of the witness in making his or her statement, thus aiding the jury in assessing the witness's credibility. *Id.*

The videotaped deposition of Amanda H. was taken pursuant to § 967.04(7), STATS., which provides that in any criminal prosecution, any party may move the court to order the taking of a videotaped deposition of a child who has been or is likely to be called as a

[5] The confrontation right under article I, section 7 of the Wisconsin Constitution, which our supreme court has interpreted to be the same as that secured under the United States Constitution, provides: "In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face." *State v. Burns*, 112 Wis. 2d 131, 144, 332 N.W.2d 757, 764 (1983).

30

witness. Upon notice and hearing, the court may issue an order for such a deposition if the trial or hearing in which the child may be called will commence prior to the child's twelfth birthday, or prior to the child's sixteenth birthday and the interests of justice warrant that the child's testimony be prerecorded for use at the trial or hearing. Section 967.04(7)(a), STATS.[6] The statute sets out ten factors the court may consider in determining the interests of justice, § 967.04(7)(b), and specifies the procedure to be followed at the deposition, if one is allowed. Section 967.04(8). The judge presides at the taking of the deposition, an oath or its equivalent is administered to the witness, and the defendant is afforded his or her opportunity for cross-examination. Section 967.04(8).

The court may admit the videotaped deposition into evidence during a criminal prosecution without an additional hearing. Section 967.04(9), STATS. If the deposition is admitted, the child may not be called as a witness, "unless the court or hearing examiner so orders upon a showing that additional testimony by the child is required in the interest of fairness for reasons neither known nor with reasonable diligence discoverable at the time of the deposition by the party seeking to call the child." Section 967.04(10).

The purpose of the statute is to preserve evidence which might otherwise be lost and to protect the child witness from further traumatization by the legal pro-

---

[6] Our supreme court has held that regardless of the age of the child witness, the trial court must make findings, appropriate to the particular witness and the particular proceeding, that support the necessity of a special procedure. *State v. Thomas*, 150 Wis. 2d 374, 387, 442 N.W.2d 10, 16 (*Thomas II*), *cert. denied*, 493 U.S. 867 (1989).

cess. *State v. Thomas*, 144 Wis. 2d 876, 888, 425 N.W.2d 641, 646 (1988) (*Thomas I*), *confirmed and supplemented in light of Coy v. Iowa*, 487 U.S. 1012 (1988), 150 Wis. 2d 374, 442 N.W.2d 10 (*Thomas II*), *cert. denied*, 493 U.S. 867 (1989).

In *Thomas I*, the court held that admission of a videotaped deposition, taken pursuant to § 967.04(7), STATS., at trial does not violate the Confrontation Clause. The court based its holding on the fact that the three purposes of the Confrontation Clause are preserved by the statute, namely the defendant's right to cross-examine the witness, the jury's ability to observe the witness's demeanor while testifying, and the requirement of testimony under oath. *Thomas I*, 144 Wis. 2d at 887, 425 N.W.2d at 645.

The *Thomas I* court recognized the constitutional preference for actual confrontation of witnesses at trial, but noted that the right of confrontation is not absolute and "must occasionally give way to considerations of public policy and the necessities of the case." *Thomas I*, 144 Wis. 2d at 888, 425 N.W.2d at 645-46. The court concluded that the public policy of allowing crucial testimony into evidence that might otherwise be lost and protecting children from further traumatization by the legal process, in conjunction with the fact that the fundamental protections of the confrontation clause are afforded the accused under the statute, outweigh the constitutional preference for live confrontation of witnesses at trial. *Id.* at 888-89, 425 N.W.2d at 646.

The court also rejected the argument that admission of the videotaped deposition must be conditioned on a finding of unavailability of the child witness. The court stated,

> Generally, a showing of unavailability is required where the substitute for the witness' in-court testimony deprives the accused of the truth-determining mechanisms of the confrontation clause. Because a videotaped deposition under § 967.04(7)-(10), Stats., is the functional equivalent of live testimony and ensures the fundamental protections of the confrontation clause, . . . we conclude that a demonstration of unavailability is not required.

*Id.* at 890, 425 N.W.2d at 646 (citations omitted).

We recognize that *Thomas I* and *Thomas II* dealt with the admission of a videotaped deposition at trial, not at a retrial following a mistrial. Nevertheless, we conclude that the analysis in *Thomas I* and *Thomas II* is applicable here and that Kirschbaum's confrontation rights were not violated by the admission of the videotaped deposition at her retrial. As with the first trial, the fundamental protections of the Confrontation Clause were preserved: the right to cross-examine Amanda H., the jury's ability to observe Amanda H.'s demeanor while testifying and the requirement of testimony under oath. The videotaped deposition was, therefore, the functional equivalent of in-court testimony, with the exceptions that the jury viewed taped testimony rather than live testimony and that Kirschbaum confronted Amanda H. prior to trial rather than at trial and before a jury. *See Thomas I*, 144 Wis. 2d at 888, 425 N.W.2d at 645.

Kirschbaum does not contend that the trial court should have excluded Amanda H.'s videotaped deposition because the particularized findings made by the trial court prior to the first trial pursuant to § 967.04,

STATS., were no longer applicable.[7] Rather, she contends that the trial court should have excluded the videotaped deposition and permitted new testimony, either by a second videotaped deposition or in person, because her new attorney would not have conducted the videotaped deposition in the same manner. We find this argument unpersuasive.

First, § 967.04(10), STATS., provided Kirschbaum with an opportunity to call Amanda H. as a witness at the retrial if she had shown that additional testimony by the child was required in the interest of fairness for reasons not known nor with reasonable diligence discoverable at the time of the deposition. Kirschbaum was unable to make such a showing. At the hearing on her motion to exclude the videotaped deposition, Kirschbaum's attorney did not state that the transcripts of the interviews conducted with Amanda H. were not available to Kirschbaum at the time the videotaped deposition was taken, or were not "with

---

[7] Kirschbaum did not ask the trial court to make new findings under § 967.04, STATS., prior to the retrial. While the dissent recognizes that Kirschbaum has not raised this issue, it nevertheless concludes that because the trial court did not make the requisite case and witness-specific findings for purposes of the retrial, the videotaped deposition was not admissible as a substitute for the child's live testimony. This court has no duty to consider any issues other than those presented to it. *Waushara County v. Graf*, 166 Wis. 2d 442, 453, 480 N.W.2d 16, 20, *cert. denied*, 113 S. Ct. 269 (1992). The Wisconsin Supreme Court only recently reiterated that "[t]here are real problems with addressing unmade claims and developing the arguments for one side to a dispute." *Swatek v. County of Dane*, 192 Wis. 2d 47, 52 n.1, 531 N.W.2d 45, 47 (1995). We see no compelling reason to develop and decide this argument, one raised neither before the trial court nor on appeal.

reasonable diligence discoverable at the time of the deposition," such that Kirschbaum's first attorney was unable to effectively cross-examine Amanda H. on any allegedly inconsistent statements she made concerning the incident. Although Kirschbaum's counsel contends that he wished to cross-examine Amanda H. on inconsistent statements which were brought to light by other witnesses for the State at the first trial, Kirschbaum's counsel acknowledged at the motion hearing that, "I know the State says [Kirschbaum's first attorney] should have discovered those things. They said they turned everything over. I'm not saying they didn't. I think they probably did."

Second, the fact that Kirschbaum was represented by a new attorney at the retrial who may not have cross-examined Amanda H. in the same manner as her first attorney is not of constitutional significance. "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original); *State v. Myren*, 133 Wis. 2d 430, 439 n.4, 395 N.W.2d 818, 823 (Ct. App. 1986). *See also Mancusi v. Stubbs*, 408 U.S. 204, 215 (1972) ("No one defense counsel will ever develop precisely the same lines of inquiry or frame his questions in exactly the words of another"). In *Ohio v. Roberts*, 448 U.S. 56 (1980), in the context of holding that a transcript of a witness's testimony from a preliminary hearing could be admitted at trial where the witness was unavailable, the Court rejected a similar "new attorney" argument as follows:

35

Nor does it matter that, unlike Green,[8] respondent had a different lawyer at trial from the one at the preliminary hearing. Although one might strain one's reading of Green to assign this factor some significance, respondent advances no reason of substance supporting the distinction. Indeed, if we were to accept this suggestion, Green would carry, the seeds of its own demise; under a "same attorney" rule, a defendant could nullify the effect of Green by obtaining new counsel after the preliminary hearing was concluded.

*Roberts*, 448 U.S. at 72.

Because Kirschbaum did not make a showing that additional testimony by the child was required in the interest of fairness for reasons neither known nor with reasonable diligence discoverable at the time of the videotaped deposition, her confrontation rights were not impinged by admission of the videotaped deposition at the retrial.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*dissenting*). I conclude that the trial court was required to determine whether it was necessary to substitute Amanda H.'s videotaped deposition for her live testimony at Kirschbaum's second trial. I therefore respectfully dissent.

"Where a new trial is granted in a criminal case, it generally must proceed in all respects as if no trial had been had." 58 AM. JUR. 2D *New Trial* § 588 (1989). "A new trial is defined by Blackstone as 'a rehearing of the cause before another jury; but with as little prejudice to

---

[8] In *California v. Green*, 399 U.S. 149 (1970), the Court concluded that the admission of a witness's preliminary hearing testimony to refresh the witness's memory at trial did not violate the defendant's constitutional right of confrontation.

either party, as if it had never been heard before.' " CALLAGHAN'S WISCONSIN PLEADING AND PRACTICE § 36.01 (3d ed. 1990) (quoted source omitted). When a judgment is vacated, the action stands for trial as if it had never been tried. *Slauson v. Goodrich Transp. Co.*, 99 Wis. 20, 26, 74 N.W. 574, 575 (1898). Plainly, when no judgment is entered and a new trial is required because the trial court has ordered a mistrial, it is as if no trial was ever held. If that were not the case in a criminal proceeding, the defendant would be subjected to double jeopardy. *See State v. Kendall*, 94 Wis. 2d 63, 68, 71-72, 287 N.W.2d 758, 760, 762 (1980) ("Jeopardy . . . attached at the time the mistrial was declared. The facts and circumstances of the case must be examined to determine if further prosecution is permissible.").

"The classic justification for a mistrial is that the jury has been unable to agree." *Id.* at 71, 287 N.W.2d at 762. Kirschbaum does not claim that there was not a "manifest necessity for the [mistrial]." *See id.* at 72, 287 N.W.2d at 762.

To satisfy a defendant's right to be free from double jeopardy, he or she cannot be convicted on the record made at the trial where the jury was unable to agree. "Generally, at a new trial all of the testimony must be produced anew; the former verdict may not be used or referred to either in evidence or in argument." 58 AM. JUR. 2D *New Trial* § 590 (1989). However, evidence presented at the original trial is admissible at the second trial if the evidence is competent.

> Generally, testimony given at the first trial of a case by a witness now unavailable is admissible at the second trial where the issues or subject matter are the same, or substantially the same·. . . . The deposition or testimony of a witness, now unavailable, taken at the hearing on a motion or petition for

a new trial is admissible at a retrial of the case upon the same issue.

Discovery may be had after a first trial and the granting of a new trial. A criminal defendant may be entitled to inspection of certain evidence in possession of the prosecution at the commencement of a second trial.

*Id.* at 590 (footnotes omitted).

Thus, at the "new" trial, Kirschbaum was entitled "to meet the witnesses face to face." WIS. CONST. art. I, § 7. In *State v. Thomas*, 144 Wis. 2d 876, 887-89, 425 N.W.2d 641, 645-46 (1988) (*Thomas I*), *confirmed and supplemented in light of Coy v. Iowa*, 487 U.S. 1012 (1988), 150 Wis. 2d 374, 442 N.W.2d 10 (*Thomas II*), *cert. denied*, 493 U.S. 867 (1989), the Wisconsin Supreme Court concluded that a videotaped deposition under § 967.04(7)-(10), STATS., was "the functional equivalent of in-court testimony" and was constitutional. The court said that the preference for live confrontation of witnesses at trial must give way to the compelling reasons to protect child witnesses. *Id.* at 889, 425 N.W.2d at 646. The court further concluded that "[b]ecause a videotaped deposition under [this statute] is the functional equivalent of live testimony and ensures the fundamental protections of the confrontation clause . . ., we conclude that a demonstration of unavailability is not required." *Id.* at 890, 425 N.W.2d at 646. However, *Coy v. Iowa*, 487 U.S. 1012 (1988), was decided the day after the Wisconsin court released *Thomas I*. Justice Scalia wrote that special arrangements to protect child witnesses by videotaping depositions were impermissible because they were not face-to-face confrontations. The *Thomas II* court[1] concluded that it was not clear whether Justice Scalia's

---

[1] *State v. Thomas*, 150 Wis. 2d 374, 442 N.W.2d 10 (1989).

opinion represented the view of the majority. The *Thomas II* court stated:

> What we can conclude . . . is that Justice Scalia recognized that exceptions to "face-to-face" confrontation may exist in certain particularized cases supported by specific proper findings. . . . While the sweep of the *Coy* case is problematic, we can, with confidence, conclude that, although generalized legislative policy will not justify special procedures to protect a child witness from trauma, exceptions may be recognized when there are case-specific and witness-specific findings of necessity.

*State v. Thomas*, 150 Wis. 2d 374, 380, 442 N.W.2d 10, 13-14 (1989). The Wisconsin Supreme Court adhered to its holding in *Thomas I* that the state was not required to show that a child witness was unavailable before the child's videotaped testimony could be substituted for the witness's live testimony. *Id.* at 393, 442 N.W.2d at 19. Whether we speak in terms of "unavailability" or "necessity," the fact remains that before a trial court may substitute videotaped testimony of a child witness for live testimony, the trial court must make "case-specific" and "witness-specific" findings that the child is not able to testify. Because, in this case, the trial court did not make such findings in the new trial, the "old" videotaped deposition was not admissible as a substitute for the child's live testimony. Of course, the child's previous videotaped testimony may be used at trial to show a prior consistent or inconsistent statement.

I recognize that Kirschbaum has not made this argument. However, because the error involves erroneous admission of evidence which affects a substantial right, we must take notice of this plain error. Section 901.03(4), STATS., provides: "Nothing in this rule pre-

cludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge." While the Wisconsin decisions are inconsistent in their application of the "plain error" rule,[2] *Screws v. United States*, 325 U.S. 91, 107 (1944), remains the law of the land. In that case, the United States Supreme Court stated:

> It is true that no exception was taken to the trial court's charge. Normally we would under those circumstances not take note of the error. But there are exceptions to that rule. *And where the error is so fundamental* as not to submit to the jury the essential ingredients of the only offense on which the conviction could rest, *we think it is necessary to take note of it on our own motion.* Even those guilty of the most heinous offenses are entitled to a fair trial.

(Emphasis added; citations omitted.) Accordingly, when we "note" an error which affects a fundamental and substantial right of the defendant and may have deprived him or her of a fair trial, we have a *duty* to at least review the error, whether or not we conclude that the error was so substantial that defendant is entitled to a new trial. We have such a duty in the present appeal.

---

[2] *See State v. Pichler*, No. 88-0670-CR, unpublished slip op. at 12-20 (Wis. Ct. App. May 17, 1990) (Sundby, J., concurring). At least one Wisconsin Supreme Court Justice has specifically acknowledged this inconsistency. In *State v. Gustafson*, 119 Wis. 2d 676, 700, 350 N.W.2d 653, 665 (1984) (Abrahamson, J., concurring), *rev'd on other grounds per curiam*, 121 Wis. 2d 459, 359 N.W.2d 920, *cert. denied*, 471 U.S. 1056 (1985), Justice Abrahamson refused to join the majority's discussion of plain error because the discussion "fail[ed] to clarify an area of law that continues to create confusion."

40

It is logical, and constitutionally required, to make a redetermination of the necessity of substituting Amanda's videotaped testimony for her live testimony. Her videotaped deposition was taken in July 1992. Kirschbaum's "new" trial was held from January 10, 1994, through January 17, 1994. Thus, almost eighteen months intervened between her video and the new trial. Amanda may have matured sufficiently in that time to be available to testify at Kirschbaum's second trial. Face-to-face testimony is preferred. Because the trial court failed to redetermine the necessity of substituting Amanda's videotaped testimony for her live testimony, I conclude that Kirschbaum's fundamental and substantial right "to meet the witnesses face to face" was violated.

For these reasons, I respectfully dissent.